**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. MORGAN REYNOLDS on behalf of the UNITED STATES OF AMERICA, | : |
| Plaintiff/Relator, | : |
| v. | : |
| SCIENCE APPLICATIONS INTERNATIONAL CORP.; APPLIED RESEARCH ASSOCIATES INC.; BOEING; NuSTATS; COMPUTER AIDED ENGINEERING ASSOCIATES, INC.; DATASOURCE, INC.; GEOSTAATS, INC.; GILSANZ MURRAY STEFICEK LLP; HUGHES ASSOCIATES, INC.; AJMAL ABBASI; EDUARDO KAUSEL; DAVID PARKS; DAVIS SHARP; DANIELE VENEZANO; JOSEF VAN DYCK; KASPAR WILLIAM; ROLF JENSEN & ASSOCIATES, INC.; ROSENWASSER/GROSSMAN CONSULTING ENGINEERS, P.C.; SIMPSON GUMPERTZ & HEGER, INC.; S.K. GHOSH ASSOCIATES, INC.; SKIDMORE, OWINGS & MERRILL, LLP; TENG & ASSOCIATES, INC.; UNDERWRITERS LABORATORIES, INC.; WISS, JANNEY, ELSTNER ASSOCIATES, INC.; AMERICAN AIRLINES; SILVERSTEIN PROPERTIES; and UNITED AIRLINES, | : : : : : : : Case No. 07CV4612 (GBD) : : **AFFIRMATION OF** : **DAVID M. POLLACK** : **IN SUPPORT OF** : **MOTION TO DISMISS** : : : : : : : : : |
| Defendants. | : |

I, David M. Pollack, do hereby depose and state as follows:

1.      I am an attorney at law and a member in good standing of the Bar of the State of New York.

2.      I am a partner at the law firm of Donovan Hatem LLP.  I represent the defendants, Simpson Gumpertz & Heger, Inc. ("SGH") and Computer Aided Engineering Associates, Inc. ("CAE") in this action.

3.      I am submitting this Affirmation in support of Defendants Simpson Gumpertz & Heger, Inc. and Computer Aided Engineering Associate's Inc.'s pre-Answer Motion to Dismiss Pursuant To Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and 12(h)(3).

**Preliminary Statement and Introduction**

4.    On May 30, 2007, the relator in this case, Dr. Morgan Reynolds ("Reynolds")

commenced this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33, by filing a

complaint under seal against twenty-six defendants, including Simpson Gumpertz & Heger, Inc.

("SGH") and Computer Aided Engineering Associates, Inc. ("CAE").

5.    The Complaint alleges seven causes of action against all defendants, as follows:

(1) False Claims Act, 31 U.S.C. § 3729(a)(1) (Presentation of False Claims); (2) False Claims

Act, 31 U.S.C. § 3729(a)(2) (Making or Using False Record or Statement); (3) False Claims Act,

31 U.S.C. § 3729(a)(7) (Reverse False Claims); (4) Unjust Enrichment; (5) Payment by Mistake;

(6) Recoupment of Overpayments; (7) Common Law Fraud.  Complaint, ¶¶ 60-81.

6.    On July 11, 2007, pursuant to 31 U.S.C. § 3730, the Office of the Attorney

General for the United States of America (the "Government") notified the Court of its decision

not to intervene, see Order, dated July 6, 2007 (Gerard E. Lynch, U.S.D.J.), and the Complaint

was unsealed.

7.    Defendants SGH and CAE have not answered the Complaint, and move instead

herein, to dismiss this *qui tam* action pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and

12(h)(3).

8.    Specifically, Reynolds' FCA claims should be dismissed pursuant to Rules

12(b)(1) and (h)(3) for lack of subject matter jurisdiction under the FCA's Original Source Rule,

31 U.S.C. § 3730(e)(4)(A), because Reynolds has provided no factual basis in his Complaint to

support the FCA statutory requirement  that he must be the original source of the information

forming the basis for his FCA claims.

9.      Additionally, Reynolds' Complaint should be dismissed under Rule 12(b)(6) because he has failed to provide sufficient detail about his theory of FCA liability, or about any specific fraudulent claim, and has therefore failed to provide the requisite particularity under the heightened pleading standard of Rule 9(b), which applies to suits under the FCA.

10.     Although Dr. Reynolds' Complaint provides a rough sketch of his theory of FCA fraud, and alleges improper billing in a conclusory manner, he has failed to identify even a single specific instance of the defendants SGH or CAE  submitting a fraudulent bill to the government, and therefore the Complaint lacks the detail and specificity required by Rule 9(b).

11.     Additionally, Dr. Reynolds' FCA claims should be dismissed under Rule 12(b)(1) and (h)(3) because they are based upon the same information which is presently pending before the National Institute of Standards and Technology ("NIST"), in the form of a Request for Correction ("RFC"), and Reynolds has failed to exhaust the administrative process established by NIST for challenging the quality of information disseminated by that federal agency.

12.     Reynolds' common law claims should be dismissed because a relator in a *qui tam* action lacks standing to assert common law claims based upon an alleged injury sustained by the United States.

## Facts Alleged In The *Qui tam* Complaint

13.     Dr. Reynolds' allegations revolve primarily around a report issued by the National Institute of Standards and Technology ("NIST"), an agency of the United States Department of Commerce.  NIST was authorized under the National Construction Safety Team Act ("NCST"), 15 U.S.C.S. § 7301, to investigate the destruction of the World Trade Center complex ("WTC").  Complaint, ¶ 3.

14.     Reynolds alleges that NIST had a budget of sixteen million ($16,000,000) and contracted with each of the twenty-six defendants to assist in the investigation of what caused the destruction of the Twin Towers of the WTC ("WTC 1, 2").  Id.  On October 26, 2005, NIST issued a report entitled "Final Reports of the Federal Building and Fire Investigation of the World Trade Center Disaster" ("NCSTAR 1").  Id.

15.     Dr. Reynolds complains that the statutory purpose of the NIST investigation was to "determine why and how WTC1 and WTC2 collapsed following the initial impacts of the aircraft," but due to defendants' fraud and deceit, NIST changed the focus of NCSTAR 1 to a study of the "probable collapse sequence."  Complaint  ¶¶ 5-6.

16.     Reynolds alleges that NCSTAR 1 is fraudulent on its face, stating "[i]t is also clear and apparent on its face that NIST's explanation of the destruction of WTC 1, 2 issued in … September, 2005, is blatantly false, incomplete, misleading and fraudulent."  Id. ¶ 50 (emphasis added).

17.     Although NIST is not named as a defendant, Reynolds accuses NIST of  being aware that directed energy weapons were the true cause of the destruction of the WTC complex, and intentionally presenting a "false and misleading, fraudulent and illegal report."  Complaint ¶ 52.

18.     Reynolds alleges that NIST and the defendants knowingly participated in a "scheme" to cover up the truth that the "destruction of the WTC on September 11, 2001 was caused … by the use of Directed Energy Weapons consisting in High Energy Lasers and … other secret weapons."  Complaint  ¶ 50.

19.     He asserts that defendants Science Applications International Corporation ("SAIC) and Applied Research Associates, Inc. ("ARA") have a primary expertise in the

"development of Directed Energy Weapons (DEW) and psychological operations (psy ops)" and that it is a "small wonder, then, that NIST did not investigate what caused the destruction of WTC 1, 2; namely DEW, carried out in the manner of a psy op."  Complaint ¶ 9, 21.

20.    He alleges that in January 2006, the defendant Boeing was awarded an Air Force Contract for Directed Energy and Space Surveillance Research & Development, and is presently developing an "Airborne Laser (ABL) that serves as a platform for the use of High Energy Lasers (HEL) that … have the capacity to pulverize steel [and] destroy buildings in mere seconds, as happened to WTC 1, 2 on 9/11/01." Id. ¶ 23.

21.    Reynolds contends that "no jetliner hit WTC 1, 2."  Complaint ¶ 19.  His theory is that the visual image of jetliner hitting the WTC was a "false flag operation," also known as "a manifested psychological operation ('psy op')," and that such "psy ops" are highly classified, secret instrumentalities of the Armed Forces of the United States of America.  Id. ¶¶ 10-12.

22.    He alleges that defendants concealed the real cause of the WTC destruction by using "false, misleading and fraudulent simulations."  Complaint ¶ 7.  The simulations allegedly show a hollow aluminum aircraft impacting with structural steel and "nonetheless glid[ing] right through such steel … and leav[ing] an airplane shape, no less, as though this event were a cartoon much like the Roadrunner."  Id.

23.    He contends that the plane simulations "violate the Data Quality Act and the False Claims Act," Complaint ¶ 7, and that all of the information which defendants compiled in NCSTAR 1-8 – including several thousand pages of text, graphic displays, simulations, charts – is fraudulent and was intended to hide the fact that the WTC was destroyed by the use of "exotic weaponry known as Directed Energy Weapons."  Id. ¶ 5.

24.     Reynolds alleges that NIST purposefully contracted with defense contractors such as SAIC, ARA and Boeing because these defendants could produce a report that would conceal or divert attention from the fact that directed energy weaponry destroyed the WTC complex. Complaint ¶ 51.  Specifically, the Complaint alleges NIST's intent to conceal the use of directed energy weapons as follows:

> In other words, NIST contracted with those who have the greatest familiarity with directed energy weapons in order to produce a report that sought to go to any length necessary to avoid, disguise, omit and otherwise divert attention away from the actual, real and intended destruction of the WTC complex by use of one device, namely directed energy weaponry, while pretending that the cause was the result of conditions that would be impossible based on the extent to which the NIST report, NCSTAR 1 violated both the laws of physics and common sense.

Id. ¶ 51.

25.     The Complaint alleges that the defendants knowingly submitted cost reports, requisitions, and billing statements from 2002 through September 2005 that contained false claims for reimbursements concerning their work, Complaint ¶ 57, because the defendants "knew they included costs that the actual cause of the destruction of the WTC complex was the result of the use of directed energy weapons."  Id. ¶ 58.

26.     The Complaint does not identify any specific conduct by defendant Computer Aided Engineering Associates, Inc. ("CAE") but alleges, generally, that defendant Simpson Gumpertz & Heger, Inc. ("SGH") had an expertise that "could have been, but was not, used for purposes of calling attention to the fact that the … destruction of WTC 1, 2 could not have been caused by jetliner impacts."  Complaint ¶ 33.  The Complaint alleges that SGH "chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly."  Id.

27.    Reynolds alleges that he is an "original source" of the allegations of fraud in his Complaint.  Complaint  ¶¶ 15, 53.  He says that on March 8, 2007, he submitted a Request for Correction ("RFC letter") to NIST which challenged NCSTAR "in its entirety," id. ¶ 7, and that this March 8th RFC and the "Supplement thereto" contains the "original source" information.  Id. ¶¶ 15, 53.  In particular, he claims that the March 8, 2007 RFC "plainly stated that the WTC complex was destroyed by the use of directed energy weapons."  Id. ¶ 53.

28.    This statement is inaccurate because  Reynolds' March 8, 2007 RFC, attached to the Complaint as Exhibit "A", makes no mention of directed energy weapons.  Reynolds first mentions directed energy weapons in his RFC Supplement # 1, filed on May 1, 2007.  Compare Ex. A, RFC dated March 8, 2007 with Ex. A, Supplement #1 to RFC, dated May 1, 2007.

### Facts Alleged In Dr. Reynolds' March 8, 2007 Request For Clarification

29.    The Reynolds "Request for Correction per Section 515 of Public Law 106-554," dated March 8, 2007, is a 13-page letter, with a 5-page addendum, that is addressed to "Chief, Management and Organization Division" of National Institute of Standards and Technology, and is attached to the Complaint as Exhibit "A." Complaint, Ex. A.

30.    The March 8, 2007 Request for Correction (RFC) sets forth eight NIST web site addresses where Reynolds says that he obtained the NCTAR report, and accuses NIST of violating information quality standards.  Complaint, Ex. A at 1-3.[1]

31.    The March 8, 2007 RFC makes no mention of either directed energy weapons or psy ops, but instead criticizes NIST for relying on fraudulent data for its analysis of aircraft impacts in the NCSTAR 1 report.  Complaint, Ex. A at 1-6.  Specifically, Reynolds alleges that

---

[1] Dr. Reynolds' RFC letter, dated March 8, 2007, does not contain page numbers.  To assist the Court, and for ease of reference, defendants have included page numbers in their citations to the RFC letter.  Defendants' citations identify the first page of the RFC as page one, and the following pages are numbered sequentially.

the computer simulations commissioned by NIST depict a lack of deceleration upon impact, and therefore violate "several laws of physics." Id. at 4-6.

32.     Additionally, Reynolds contends that all videos that record United Airlines Flight 175 penetrating the South Tower are "fake evidence" and "involve special effects of some kind" because the videos "show no collision/crash and no deceleration." Complaint, Ex. A at 5. The RFC concludes that "despite the . . . 'creative' physics of NIST . . . [a] jetliner cannot push through steel walls, steel-reinforced concrete floors, and a steel core of 47 cross-braced steel columns …" Id. at 6-7.

33.     Reynolds accuses NIST of "fixing the intelligence" saying that "[i]f NIST engaged in conscious fraud, as is likely, the British would call it 'fixing the intelligence to fit the policy.'" Complaint, Ex. A at 6.

34.     In the second half of his RFC letter, Reynolds sets forth numerous quotations from the NCSTAR report regarding the average airspeed of the aircraft as it impacted the exterior wall panel, and the reduction in speed or "deceleration" which occurred. Complaint, Ex. A at 8-13.

35.     Interspersed within these quotations from the NCSTAR report are Reynolds' own "Comments," in which he points out what he believes are the scientific flaws in the NIST conclusions about the airspeed of the airliners as they entered the towers. Complaint, Ex. A at 9-13. He states that a "flimsy, high-speed jetliner must decelerate sharply upon impacting a strong, massive fixed object like a skyscraper unless the jetliner acquires more energy from somewhere …" Id. at 5.

36.     Reynolds also disagrees with NIST's conclusion that the outer wings "shredded" against the steel in the tower and that the wing material was carried into the buildings. Id. at 7.

He argues that this is "impossible," because the steel should have bounced the jetliner pieces outside each tower, but neither NIST nor any other investigation has produced "a single … part with its unique serial number from any of the alleged commercial aircraft of 9/11 … to prove aircraft identity." Id. at 7-8.

**Facts Alleged In Dr. Reynolds' May 1, 2007 Supplemental RFC**

37.    The Reynolds' May 1, 2007 Supplement to RFC Submitted March 8, 2007 ("Supplemental RFC") is a 4-page letter that is addressed to "Chief, Management and Organization Division" of National Institute of Standards and Technology, and is attached to the Complaint as Exhibit "A."

38.    Unlike the original RFC, the Supplemental RFC makes explicit allegations that the WTC complex was destroyed by directed energy weapons, and asserts that defendant SAIC has a conflict of interest that affects the integrity of its work for NIST, because SAIC is engaged in developing directed energy weapons. Complaint, Ex. A, Supplemental RFC at 1-2.

39.    In making the statement that "directed energy weapons were a causal factor in destruction of the WTC on 9/11," the Supplemental RFC credits an earlier Request for Clarification that was filed with NIST on March 16, 2007 by Dr. Judy Wood. Id. (the Supplemental RFC states "see Dr. Judy Wood's RFC filed on March 16, 2007").

40.    The National Institute Of Standards And Technology Guidelines, Information Quality Standards, And Administrative Mechanism ("NIST Guidelines") establish an administrative process for information correction requests and appeals. See National Institute Of Standards And Technology Guidelines, Information Quality Standards, And Administrative Mechanism, http://www.nist.gov/director/quality standards.htm.

41.    The Complaint does not disclose whether NIST has issued a decision on Reynolds' RFC submissions.  Upon information and belief, however, NIST notified Reynolds in August 2007 that his March 8, 2007 RFC and May 1, 2007 Supplement are still under review. Therefore, Reynolds filed his *qui tam* Complaint before NIST issued a decision on his RFC submissions.

42.    Upon information and belief, Dr. Reynolds has not exhausted the administrative process set forth in the NIST Guidelines for challenging the quality of information disseminated by NIST, a federal agency.

WHEREFORE,  for the reasons set forth herein and in the accompanying memorandum of law, the motion to dismiss should be granted in its entirety.

/s/ David M. Pollack
David M. Pollack (DP6143)
DONOVAN HATEM LLP
Attorneys for Defendants
SIMPSON GUMPERTZ & HEGER, INC.
and COMPUTER AIDED ENGINEERING
ASSOCIATES, INC.
One Penn Plaza
250 W. 34th Street
Suite 3324
New York, NY 10119
(212) 244-3333

Dated: New York, New York
October 5, 2007

10

01118407 // 25550.144