# JERRY V. LEAPHART & ASSOCIATES, P.C.
### ATTORNEYS AND COUNSELORS AT LAW
8 West Street, Suite 203
Danbury, CT 06810

Tel: 203-825 6265                                                    Facsimile: 203-825-6256

**VIA FACSIMILE (212) 805-6737**

December 12, 2007

The Honorable George B. Daniels
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DATE FILED: DEC 1 3 2007

**SO ORDERED**

*[signature]*

HON. GEORGE B. DANIELS
DEC 1 3 2007

RE: Dr. Morgan Reynolds, ex rel. USA v.
    Science Applications International Corporation, et al
    Case No. 07 CIV 4612 (GBD)

Dear Judge Daniels:

This office represents Dr. Morgan Reynolds, the plaintiff in the above cited matter.

One of the defendants, Underwriters Laboratories, Inc. "UL", has filed a motion, pursuant to Fed. R. Civ. P. 11(c), for sanctions, together with a memorandum of law and certification, as of December 7, 2007. The plaintiff requests an extension of time to file his response to that motion until thirty (30) days after the Court's ruling on certain presently pending motions to dismiss. Plaintiff's objection to said motions to dismiss are due January 28, 2008.

It is also foreseeable that should plaintiff withstand the motions to dismiss as to one or more counts of his complaint, then, in that event, it is likely that UL might recognize that its motion for sanctions is moot and would withdraw it.

Separate and apart from this request for extension of time, plaintiff notes, for the record, that defendant, UL's contention that "there is no chance of success because the Complaint is legally deficient and fails to support the relief sought" is not a matter of record and cannot be presumed to be a true or an accurate statement of fact. If that were the case, then the presently pending motions to dismiss would not need to be briefed, argued and/or decided. Thus, in point of fact, UL's contention is speculative at best, if not false as

a matter of law and of fact. Defendant UL's motion is presumptuous and premature to put it no more harshly than that.

In a letter to UL's counsel sent via email on or about November 10, 2007, said counsel was called to task for engaging in highly inflammatory language in its motion papers that sought, among other things, to presumptively invoke the memory of the victims of what occurred on 9/11/01 as if UL had some greater standing to do so than did plaintiff.

That conduct was considered to be on par with the admonition issued by Dr. Samuel Johnson centuries ago when he pointed out that "patriotism is the last refuge of a scoundrel".

Dr. Reynolds' assertions are backed by significant facts and circumstances that have not only been articulated in his complaint, they have also been presented to the U.S. National Institute of Standards and Technology (NIST), which forms the basis of the plaintiff's assertion of "original source" status, all as will be more fully elaborated in plaintiff's memorandum in opposition to the pending motions to dismiss, when submitted on or about January 28, 2008.

In its multiple, published responses to Dr. Reynolds, NIST, for its part, has been respectful and has even made at least one change that plaintiff requested of NIST, all as can be ascertained in NIST's publicly available record of the transactions between it and plaintiff.

Meanwhile, it is to be noted, again for the record, that plaintiff asserts that the defendant, UL, engaged in fraud of the type that is prohibited by the False Claims Act. Evidence of that fraud is to be found in the NIST, NCSTAR1 report that defendant, UL, is deemed to have known about, based upon it having participated in the preparation of that report as a paid consultant. Fraud can just as easily result from "willful blindness" as from overt actions.

In any event, UL caused to be published certain test results from its four physical reproductions of WTC tower floors that showed that floors did not fail even when subjected to testing at 2000 degrees Fahrenheit. See, e.g. NCSTAR 1-6b Table 5-5. Yet, despite that knowledge, UL stood idly by while NIST issued a false, misleading and fraudulent report purporting to describe conditions under which supposed (but not proven) impact damage from a single wide-body jetliner, filled with

enough kerosene (that is what jet fuel essentially is) to fill a normal size swimming pool could somehow create enough heat and do enough damage to two 110-story solid structural steel structures to cause the near instantaneous pulverization of the Twin Towers.

Further, UL can be said to have known that the north tower experienced an extensive fire in February 1975 and floors did not fail, so we have pre-2001 experience that independently confirms the validity of UL's own test results.

The real fraud here is the UL test results conducted on behalf of NIST were allowed to be ignored by NIST in arriving at its conclusions via computer simulations and animations, ostensibly because the test results were inconvenient for the official story about aircraft impacts and fires destroying the Twin Towers. UL lent its brand name legitimacy to NIST's fraudulent conclusions. Yet UL's reputation for objectivity and trustworthiness is the entire basis for UL's value to the NIST project, and thus the existence of fraud. UL's willful blindness on behalf of a governmental agency's preferred conclusion, despite being contrary to UL test results, is a form of actionable fraud.

At this preliminary stage, it can be stated that kerosene can scarcely reach ½ of 2000 degrees unless it is in optimum burning conditions (which burning in an open-air building fire are not); and, even then, kerosene cannot possibly reach a higher temperature than approximately 1200 degrees. In other words, UL stood idly by and allowed assumptions concerning temperatures that it knew could not be reached to be incorporated into a report that it knew to be false and fraudulent. Not only that, in tests that UL conducted at the impossible for kerosene to reach temperature of 2000 degrees, not even that assumed temperature resulted in the catastrophic failure that the NIST report would have us believe occurred. Fraud on UL's part is, then, clear and palpable.

Based upon this preliminary assertion of validity, it is clear that UL cannot possibly meet the requisites for sanctions and will likely fail in its motion to dismiss.

It is well understood that sanctions may be ordered by the Court pursuant to *Rule 11(c)* if an attorney violates *Rule 11(b)*. *Rule 11(b)* states, in pertinent part, that an attorney, in making a pleading to the court, certifies that

"to the best of his knowledge, information, and belief formed after an inquiry reasonable under the circumstances,--

    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

    (2) the claims, contentions, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    (3) the allegations and other factual contentions have evidentiary support, or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*Fed. R. Civ. P. 11(b)*.

Plaintiff here asserts that the analysis found in the case entitled (888) JUSTICE, INC., v. JUST ENTERPRISES, INC., Plaintiff, MARTIN & ASSOCIATES, L.L.C., DEREK P. MARTIN, COBB & COLE, P.A. and HEATHER BOND VARGAS, Defendants., 2007 U.S. Dist. LEXIS 61849 (GBD) serves as a guiding frame of reference for the inappropriateness of defendant UL's motion for sanctions.

If plaintiff prevails upon one or more of the counts in his complaint at the motion to dismiss stage, then, in that event, defendant UL might well be required to withdraw its motion for sanctions, as continuation of it at that stage would, itself, give rise to a claim for sanctions. In that instance, the aggrieved party would be the plaintiff.

Accordingly and for all of the reasons set forth above, plaintiff respectfully requests to and including thirty (30) days after the rendering of the court's decision on the pending motions to dismiss to file opposition to defendant UL's motion for sanctions.

Respectfully submitted,

Jerry V. Leaphart           CC:    All Counsel of Record