

Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
(203) 825-6256 - fax
jsleaphart@cs.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EDWARD F. HAAS, Individually, :
and on behalf of others :
similarly situated, :
                 :
        Plaintiff, :      ECF CASE
vs. :

CARLOS M. GUTIERREZ, :
 Secretary, U.S. Department :   DOCKET No. 07 CIV 3623 (VM)
 of Commerce; :
WILLIAM A. JEFFREY, Director, :
 National Institute of Standards :
 and Technology (NIST); :       MAY 9, 2007
DR. SHYAM SUNDER, Lead :
 Investigator of NIST, WTC :
 Investigation; :
DR. THERESA McALLISTER, :    **FIRST AMENDED COMPLAINT**
 Research Structural :        **INJUNCTIVE AND**
 Engineer, NIST; :       **DECLARATORY RELIEF,**
CATHERINE FLETCHER, Chief, :  **ATTORNEY'S FEES, COSTS OF SUIT**
 Management and Organizational:          **PER**
 Division, National Institute :  **BIVENS v. SIX UNKNOWN AGENTS,**
 of Standards and Technology :   **403 U.S. 388, 390-97 (1971),**
 (NIST); :                  **AND**
APPLIED RESEARCH ASSOCIATES, :  **ADMINISTRATIVE PROCEDURE ACT,**
 INC.; SCIENCE APPLICATIONS :   **5 U.S.C. § 551 et seq., and**
INTERNATIONAL CORP.; :         **5 U.S.C. § 701 et seq.**
SILVERSTEIN PROPERTIES; and :
JOHN DOE I-V, Contractors, :
 Employed by NIST, :

         Defendants. :





I.

## Nature of Action

1.    This action is brought pursuant to (a) <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388, 390-97 (1971) (<u>Bivens</u>), for (i) violations and threatened violations of the plaintiff's rights to Due Process under the Fifth Amendment to the United States Constitution; and (ii) violations and threatened violations of the plaintiff's rights pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"); and (iii) in furtherance of plaintiff's rights to seek administrative review, including that of injunctive relief and/or a delay in conducting further challenged administrative agency action as per 5 U.S.C. § 701 et seq.

2.    Plaintiff has submitted a Request for Correction (RFC) under and pursuant to the Data Quality Act (DQA), per Section 515 of Public Law 106-554, which said RFC has been pending within that certain department of the United States Department of Commerce known as the National Institute for Standards and Technology

2

(NIST), from on or about February 28, 2007 through and including the present a period of time that exceeds sixty (60) days.

3.    Per the published Rules and Regulations found at http://www.nist.gov/director/quality standards.htm, plaintiff should have been informed as follows:

> "3.   The division Chief will communicate his/her initial decision or the status of the request through the NIST OU Deputy Director to the Chief, NIST Management and Organization Division, who will communicate the initial decision to the requester, usually with 60 calendar days of NIST's receipt of the request.
>
> 4. The initial decision or status update will contain the name and title of the Division Chief and a notice that the requester may appeal an initial denial to the NIST Deputy Director (with the name, title, and address of that official), pursuant to paragraph III.D.1. below, within 30 calendar days of the date of the initial denial." (Excerpted from National Institute of Standards and Technology Guidelines, Information Quality Standards, and Administrative Mechanism)

As of the date hereof NIST is in breach of the quoted regulation in that plaintiff has not been informed of the status of his said pending RFC.

4.    In the interim, however, NIST has published information indicating it is working on finalizing a report on what caused the 6.6 second collapse of World Trade Center building number 7 (WTC7), which building was seen in video to have been destroyed, from tippity top to utter bottom, via live video taped television programming, in the said 6.6 second time interval occurring at

approximately 5:20 PM on September 11, 2001. As of that date and

time, WTC7 joined the 110-story World Trade Center Twin Towers,

that had been known as World Trade Center building 1 (WTC1) and

World Trade Center building 2 (WTC2), respectively, for address

purposes, as the only three steel-reinforced skyscrapers ever to

have self-destructed, from top to bottom, in a matter of mere

seconds; except, that is, such structures as had been

intentionally demolished by way of controlled demolition

procedures and/or destruction resulting from warfare or military

means. Moreover, even as to such structures, the previous world's

record height for even the controlled demolition of a building was

only 439 feet, the height of the 25-story J. L. Hudson department

store building in Detroit, MI. See:

http://www.infoplease.com/askeds/tallest-building-demolished.html

> "According to the Guinness Book of World Records, the tallest
> building demolished by explosives was the former J. L. Hudson
> Department Store in Detroit, MI. It stood at 439 feet when
> it was imploded on October 24, 1998."

Note, too, that controlled demolitions are not foregone

conclusions and they are not easy to accomplish. The higher the

building is, the more likely it is that something will go awry.

With respect to the J. L. Hudson building, we are told:

> "Complicating the implosion, engineered by Controlled
> Demolition Inc. (CDI) of Phoenix, MD, was the fact that
> construction of the building occurred in 12 stages between
> 1911-46 and no structural drawings of the building existed.

4

> But the record-setting implosion went off without a hitch. The roughly 2,728 lbs. of explosives placed inside the building reduced it to piles of debris in a matter of seconds."

Thus the implications here are clear: On 9/11/01 not one, not two, but three, modern, steel-reinforced skyscrapers fell into their own foot-prints in nearly perfect, controlled demolition-like fashion. Each one far exceeded the previous world-record heights for a controlled demolition…

The focus herein is WTC7. The observed demolition of that building demonstrated a near text-book quality demolition as per what the naked eye could see. Yet, after all this time, NIST has neither issued a report nor even responded to plaintiff's RFC. The elements of deprivation of right are clear and apparent, justifying the injunctive relief here sought.

For the record, WTC7 stood 570 feet in height and was 47 stories. It was, then, significantly taller, with nearly double the number of floors in comparison with Hudson's.

    5.    It was not until in or about the month of September, 2005, that NIST issued a final report on what it alleged caused the "initiation" of what it called the "collapse" of WTC1,2. NIST's said report is commonly known as and referred to as NCSTAR 1 and can be accessed at:

http://wtc.nist.gov/reports_october05.htm.

6.    To this day, NIST has not yet issued any report on what caused the 6.6 second destruction of WTC7, but has issued certain interim public statements confirming that it is in the process of working on issuing a report on what caused the destruction of WTC7.

7.    In or about the month of October, 2006, approximately (6) months ago, NIST, for the first time, issued a publicized report that it is to consider "hypothetical blast events" as a possible causal factor in the destruction of WTC7.  Said publicly disseminated information can be found at

http://wtc.nist.gov/media/WTC7 Approach Summary12Dec06.pdf

8.    The summary found at the link listed above in paragraph 7. states at pg. 11 thereof a materially false statement to wit: "While NIST has found no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios…".  That statement is materially false because it stands in clear, palpable, direct and blatant contradiction of the statement acknowledging and admitting that WTC7 was felled by controlled demolition which statement was made by Larry Silverstein, a principal of defendant Silverstein Properties, in a publicly disseminated video statement airing on the US Public Broadcasting System, in which Larry Silverstein stated, and we quote him verbatim:

"I remember getting a call from the er, fire department commander, telling me that they were not sure they were gonna

6

be able to contain the fire, and I said, 'We've had such terrible loss of life, maybe the smartest thing to do is pull it.' And they made that decision to pull and we watched the building collapse."

As Silverstein Properties is or was a consultant for NIST under and pursuant to the preparation of NCSTAR 1, it is utterly incongruent, inconsistent and incomplete for NIST to declare it has no evidence of controlled demolition when, in fact, it has actively consulted with a party who has admitted just that. In addition, said admission, and NIST's misleading and fraudulent declaration that it has no evidence of controlled demolition, confirms the existence of a clear and palpable conflict of interest mandating the injunction here sought.

9.    Plaintiff's RFC goes to the essence of the defendant, NIST's improper lack of treatment of the issue of controlled demolition with respect to WTC7.

10.  Based on the amount of time that has already elapsed since the 6.6 second top to bottom destruction of WTC7 on the afternoon of September 11, 2001, it is acknowledged that it is in the public interest to have a report on that event issued. However, the same could be said for anytime after, roughly, 90 days from the event itself in that one can safely assert that 90 days should have been a reasonable time to issue an official report on an event that is both as important and as anomalous as is the complete and utter destruction of a skyscraper in a matter

7

of seconds where such skyscraper had not been hit by either an
acknowledged bomb or by an apparent jetliner or by anything else.
Yet it fell right straight down, looking for all the world to see,
like a controlled demolition.  It should not take any competent
group of investigators six (6) years to determine the destruction
of WTC7 was a controlled demolition.  Yet, despite the interest
and the urgency in needing to know how on earth such an event
could have happened, promptly, we are now nearly six (6) years'
time from the event and it is only with the last one-hundred-
twenty (120) days, or so, that NIST has even acknowledged it might
need to look into "hypothetical blast events".  Based upon the
confirmed and verifiable facts here asserted, a delay in the
further processing, by NIST, of analytical work pending resolution
of plaintiff's RFC is plainly meritorious and just.  Plaintiff's
RFC alleges the existence of conflicts of interest and other
elements found that may be dispositive of a) why it has taken so
long; b) why the obvious evidence of controlled demolition has
been: i) hidden; ii) ignored; and iii) downplayed.

     11.  Annexed hereto as Exhibit A is a copy of plaintiff's
RFC, appended to a request for negotiations addressed to NIST's
Deputy Chief Counsel for Technology, Attorney Melissa Lieberman,
that sought negotiations for forbearance of further work done on
analyzing what caused the 6.6 second destruction of WTC7 pending
outcome of plaintiff's RFC.

12. To date, there has been neither acknowledgment nor reply from NIST via either defendant, Catherine Fletcher, Deputy Chief Counsel Lieberman, nor anyone else in apparent authority at NIST.

13. In any event, and as indicated, Deputy Chief Counsel Lieberman has not responded to the request for negotiations heretofore submitted with respect to forbearance on further assessment by NIST of what caused the near instantaneous destruction of WTC7.

14. Based upon all of the foregoing, plaintiff herein asserts that:

15. The Fifth Amendment's Due Process clause requires notice and the opportunity to be heard before NIST can continue to proceed on its investigation of what caused the near-instantaneous destruction of WTC7.

16. NIST's lack of response is in violation of the APA's procedural requirements, and is arbitrary, capricious, and unreasonable in the circumstances here presented and is an abuse of discretion and otherwise not in accordance with law.

17. In the DQA, Congress established a federal scheme that regulates the requirements and standards that information promulgated by agencies of the government of the United States, "Federal Agencies" must adhere to in order to assure that such information comports with quality standards. When such information is deemed as "influential information" the

requirements for meeting quality standards are higher than they otherwise would be. It is here asserted that the information that is to result from the analysis of what caused the near-instantaneous destruction of WTC7 will be deemed, under the DQA, to be "influential information." Thus, plaintiff's RFC that alleges certain well-documented particulars as to how and why the information thus far released with respect to the investigation of WTC is internally inconsistent and fraught with obvious indicators of unlawful conflict of interest, all as more fully elaborated in Exhibit A, clearly mandates the relief to be requested herein.

18. The claims in this complaint are cognizable under Bivens and the APA.

II.

Parties

19. Plaintiff, Edward F. Haas, ["EFHaas"] is a United States citizen and a resident of the State of South Carolina.

20. Defendant Carlos M. Gutierrez is the Secretary of Commerce of the United States. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

21. Defendant William A. Jeffrey is the Director of the National Institute of Standards and Technology (as aforesaid, "NIST"). In that role, he is responsible for exercising the authority delegated by the Secretary of Commerce to enforce the

DQA. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

22.    Defendant Dr. Shyam Sunder is the Lead Investigator of the team designated to and charged with determining what caused the near-instantaneous destruction of WTC7. As such, he is charged with conducting, and is authorized to direct the processes and procedures for and on behalf of NIST is furtherance of the WTC7 investigation. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

23.    Defendant Dr. Theresa McAllister is employed by NIST as a Research Structural Engineer and who is known to have responsibilities directly related to performance of work and tasks in furtherance of NIST's attempt to determine what caused the near-instantaneous destruction of WTC7, such as the first-time announcement made in or about the month of October 2006, that NIST would then investigate the possibility of "hypothetical blast events" as being causal of the near-instantaneous destruction of WTC7. Accordingly, Dr. McAllister appears to have significant responsibility for overseeing the work done in furtherance of the WTC7 investigation. She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

24. Defendant Catherine Fletcher is the Chief, Management and Organization Division of NIST charged with the acknowledgment of RFCs to the sender of said RFCs. She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

25. Defendant Applied Research Associates Inc. (ARA) is an "employee owned" corporation having its principal office and place of business at 4300 San Mateo Blvd. NE • Suite A-220 • Albuquerque, NM 87110 that currently operates ARA 73 offices in the United States and in Canada, some of which have classified computing and storage and military applications abbreviated as:

- SEI CMMI Certification
- SCIF facilities
- SIPRNET access

ARA also has:

- Manufacturing/prototyping facilities
- Laboratories
- Testing facilities

located in various states, including, without limitation, the States of Vermont, Florida, Colorado and Texas. ARA, upon information and belief, manufactures or causes to be manufactured, develops and/or tests DEW that are operational in Earth orbit, at high altitude, low altitude, at sea and on land ranging in lethality from the capacity to do great damage, such as that of destroying the World Trade Center Twin Towers in less than 10

seconds each, as occurred on 9/11/01, down to and including imposition of a disabling stun on human beings for crowd control and/or other psy ops purposes.

26. Defendant Science Applications International Corporation (SAIC) is a publicly traded company which has its principle office at SAIC Headquarters, 10260 Campus Point Drive, San Diego, CA 92121. It has offices in 150 cities worldwide. It describes itself as "one of the largest science and technology contractors to the U.S. Government" and provides services and products for "all branches of the U.S. military, agencies of the U.S. Department of Defense (DoD), the intelligence community, the U.S. Department of Homeland Security (DHS) and other U.S. Government civil agencies". In January 2005, SAIC was awarded an Air Force Research Laboratory Contract for High Power Microwave Program (http://www.saic.com/news/2005/jan/03.html). In 2005, SAIC also ran chemical oxygen iodine laser (COIL) at a branch of the Air Force Research Laboratory in Albuquerque, NM. (http://www.saic.com/news/saicmag/2005-fall/directedenergy.html). SAIC also engages in psy ops of the type that are intended to mislead the publics of targeted countries in furtherance, it would appear, of the Hobbesian principal that "in warre force and fraud are the cardinale virtues." Be that as it may be from a philosophical perspective, embodying, as it does, the more commonly expressed notion that "might makes right", the DQA, by

13

its terms, prohibits the use of fraud in the preparation of governmental documents and the provision of governmental services. SAIC engaged in fraud, then, in the wrong place and in the wrong context. Between ARA and SAIC, some twenty-five (25) persons were assigned to work on, by literally surrounding and, accordingly, controlling and manipulating, NIST officials such that fraud, the intended outcome, did, in fact, occur and will continue to occur unless enjoined from doing so. It is telling that the two contractors who were most numerous among NIST's contractors were those whose primary expertise is in weapon development and PSY OPS respectively. Small wonder, then, that NIST has found no evidence of controlled demolition, irrespective of an admission to that effect having been publicly made by a principal owner of the WTC complex.

27. Defendant Silverstein Properties has an office or place of business at 250 Greenwich Street, 38th Floor New York City, NY 10007 and holds a leasehold interest in and to the WTC site. As such, this defendant had a clear conflict of interest in steering the investigation away from any hint, suggestion, much less conclusion that controlled demolition was a causal factor in the destruction of WTC7. Indeed, one anomaly that should be a hint that something is amiss is that all buildings having an address prefix of "World Trade Center," namely buildings 1 through and

14

including 7, were all completely and utterly destroyed on 9/11/01.
Yet, for as horrific as that destruction was, virtually all other
buildings in the area, some having a spatial relationship that was
as close or nearly so as the WTC buildings were, one to the other,
were not damaged very much at all, relatively speaking.   Upon
information and belief, Silverstein Properties benefited from an
insurance claim relating to the events of 9/11/01.   Upon
information and belief, at least two of the insurers found to have
been liable under their policies of insurance or of reinsurance
with respect to this defendant, have, nonetheless, questioned the
validity of the claim, based, in part, on the admission made by
Larry Silverstein that WTC7 was intentionally demolished, or words
to that effect as quoted above in paragraph 8; and, further based
on the as yet inadequate explanation of what did, in fact, cause
the destruction of the World Trade Center complex.   In that and in
other ways,   defendant chose to use its expertise to commit fraud
based on either withholding information or manipulating
information and by then accepting payment improperly.   Most
assuredly, this defendant has a clear, palpable conflict of
interest that would motivate it to manipulate and avoid any
consideration that controlled demolition might have been a causal
factor in the destruction of WTC7.

28. Defendants John Does I - V are employed by NIST as contractors to prepare for and carry out the work being done and to be done in furtherance of NIST's ongoing investigation of the destruction of WTC7. Plaintiff does not know, and the defendants have not revealed, their identities.

29. The defendants are acting, and each of them at all times relevant hereto were acting, in their respective official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of federal law. Upon information and belief, unless preliminarily and permanently enjoined, the defendants, and each of them, intend to act in their respective official capacities and under the authority of federal law in carrying out the ongoing investigation of the destruction of WTC7, in violation of the plaintiff's constitutional and statutory rights.

III.

Jurisdiction and Venue

30. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States; Bivens, 403 U.S. at 390-97, in that it seeks to secure prospective, equitable relief directly under the Constitution, specifically the Fifth Amendment; under 28 U.S.C. § 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, in that one

16

purpose of this action is to secure preliminary and permanent injunctive relief. Judicial review of the agency action at issue is authorized by the APA, 5 U.S.C. §§ 702, 704 and 706.

31.   This Court has venue under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims made herein - i.e., the location of the building destroyed on September 11, 2001, namely, WTC7, took place in this District. Alternatively, this Court has venue under 28 U.S.C. § 1391(b)(3) because at least one of the defendants maintains an office in New York City.

IV.

Facts

32.   The plaintiff incorporates by reference all facts and allegations contained in paragraphs 1 through 31.

33.   The plaintiff filed an RFC under the DQA on or about February 28, 2007.  To date, there has been no reply or other acknowledgment by defendants or anyone acting on their behalf of receipt of plaintiff's said RFC.

34.   The defendants likewise rejected, by non-responsiveness, plaintiff's request for negotiations for forbearance that plaintiff had submitted on or about March 2, 2007, as per Exhibit B.

35.   On information and belief, the defendants and/or their agents may wish to continue disregarding plaintiff's RFC with the intent to issue a report on the destruction of WTC7 based on

continued adherence to the flawed premises and with the existing conflicts of interest, irrespective of plaintiff having now called attention to them, all as more fully articulated in Exhibit A hereof.

V.

Exhaustion of Remedies

36. Plaintiff EFHaas has exhausted his administrative remedies, having filed an RFC with NIST, in compliance with the DQA, challenging certain specific aspects of disseminated information and having made specific requests for relief that are presently pending, but which, even if favorably acted upon, would be rendered moot, absent a temporary order that would permit a determination of rights and of responsibilities in the present and before any further harm can be done; in other words, for prospective injunctive relief.

VI.

First Claim: Violation of Administrative Procedure Act –<br>Ultra Vires Agency Action

37. Plaintiff incorporates by reference the allegations of paragraphs 1 through 36.

38. Under § 706(2)(c) of the Administrative Procedure Act, a reviewing court must set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations . . ." 5 U.S.C. § 706(2)(c).

18

39.   The regulations promulgated by the defendants to implement the DQA would be rendered moot in the absence of an agreed upon format for forbearance pending the completion of the RFC process presently pending before NIST.   Indeed, in the absence of such procedure for obtaining forbearance, it is clear that the DQA procedures currently followed by NIST are, were promulgated without any "statutory jurisdiction, authority, or limitations," and must therefore be set aside. 5 U.S.C. § 706(2)(c).

VII.

Second Claim: Violation of Administrative Procedure Act –
Agency Action That Is Arbitrary, Capricious, An Abuse Of
Discretion And Otherwise Not In Accordance With Law
In Promulgating DQA Regulations.

40. Plaintiff incorporates by reference the allegations of paragraphs 1 through 39.

41.   The APA imposes upon the defendants a number of nondiscretionary duties regarding rulemaking procedures. 5 U.S.C. § 553. The APA requires a federal agency to provide adequate notice to the public regarding the nature, scope and effects of any proposed or final agency action. The APA also requires that the federal agency provide the public with a full and fair opportunity to comment regarding any proposed agency action. Based upon the filing of his RFC on February 28, 2007, it is clear that even though he has done so, the absence of an agreement for forebearance by NIST pending the outcome of that RFC would render

19

his having filed it moot. The defendants have failed to respond adequately – or at all – to plaintiff's request to be heard on the issue of forbearance.

42.   The APA also requires a federal agency to fully articulate its basis and reasons regarding any final agency action. The defendants have failed to explain adequately the basis and reason(s) for not responding to plaintiff's request for negotiations concerning procedures pending the determination of plaintiff's RFC.

43.   The defendants' failure to comply with the APA's procedural requirements was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Therefore, in refusing to either negotiate with plaintiff concerning forbearance during the pendency of plaintiff's RFC, the defendants violated the APA, and their actions must be set aside.

VIII.

Third Claim: Violation of Administrative Procedure Act –
Arbitrary And Capricious Failure To Abide
By The Standards

44.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

45.   Now that plaintiff has filed an RFC, it should not be rendered ineffectual before it can even be determined.

46.   Regulations promulgated by NIST and/or the defendant U.S. Department of Commerce simply do not permit for a meaningful

20

consideration of RFC's in the absence of any procedure allowing
for either mandatory or permissible forbearance from action
pending the outcome of submitted RFCs.  Moreover, on information
and belief, the defendants have arbitrarily and capriciously
failed to exercise their authority to enforce the DQA, by not
responding within sixty (60) days, either with respect to the DQA
request and the investigation into what caused the destruction of
WTC7.   Such arbitrary and capricious action violates the APA.

IX.

## Prayer for Relief

47. An order to prevent the defendants from violating the
plaintiffs' rights under the Fifth Amendment to the United States
Constitution and the Administrative Procedure Act, the plaintiff
requests that this Court grant preliminary and permanent
injunctive relief barring the defendants from engaging in either
all or some specifically designated portions of work on
determining the causes of the near-instantaneous destruction of
WTC7, until the outcome of plaintiff's presently pending RFC is
known.

48.  The plaintiff is entitled to a preliminary injunction
barring the defendants from engaging in certain additional work on
determining the causes of destruction of WTC7 because:

(a) there is a significant likelihood that the plaintiff will
prevail on the merits;

21

(b) the plaintiff will suffer irreparable harm if his RFC is allowed to languish while ongoing work on determining the causes of the destruction continue despite his having raised the serious concerns that he has raised that show how and in what manner that investigation is imperiled;

(c) there is a compelling public interest in ensuring that persons charged with engaging in work for and on behalf of the public not be allowed to steer investigations in a manner so as to produce a false, fraudulent and/or misleading outcome, as will almost certainly happen unless this Court requires that defendants cease and desist from certain designated activities in furtherance of the ongoing WTC7 investigation pending the outcome of plaintiff's presently pending RFC.

49. Plaintiff further request that this Court grant declaratory relief by issuing an Order declaring that the defendants' current means, methods, practices, procedures, and customs regarding procedures under the DQA violate the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act.

50. Plaintiff requests that this Court grant reasonable attorney fees pursuant to 42 U.S.C. § 1988 and the laws of the United States.

51.  Plaintiff requests that the Court grant such further relief as it deems just and proper.

                                    THE PLAINTIFF

                                    By_____
                                    Jerry V. Leaphart JL4468
                                    JERRY V. LEAPHART & ASSOC., P.C.
                                    8 West Street, Suite 203
                                    Danbury, CT 06810
                                    (203) 825-6265 - phone
                                    (203) 825-6256 - fax
                                    jsleaphart@cs.com

Dated:     Danbury, CT
           May 9, 2007