Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

| | | |
|---|---|---|
| DR. MORGAN REYNOLDS, on behalf of | : | |
| The United States of America | : | |
| | : | |
| Plaintiff, | : | <u>ECF CASE</u> |
| vs. | : | |
| | : | January 28, 2008 |
| SCIENCE APPLICATIONS | : | |
| INTERNATIONAL CORP., et al | : | 07 CIV 4612 (GBD) |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

January 28, 2008                                         Jerry V. Leaphart
                                                        Attorney for Plaintiff
                                                        On the Brief

**ORAL ARGUMENT REQUESTED**
*<u>TESTIMONY MAY BE REQUIRED</u>*

# TABLE OF CONTENTS

I.      Overview…………………………………………………………    1

II.     Statutory and Regulatory Framework………………………………    6

        A.      The False Claims Act…………………………………………    6

III.    Procedural History………………………………………………….    8

IV.     The Motions to Dismiss…………………………………………….    8

V.      Standard of Review on Motion to Dismiss…………………………    11

        Rule 12(b)(1)………………………………………………………...    11

VI.     Argument……………………………………………………………    15

        Part I ……………………………………………………………….    15

                A)      Skidmore, Owings & Merrill (SOM)………………    15

                B)      ARA………………………………………………………    18

                C)      SGH/CAE…………………………………………………...    20

        Part II  Affirmative Arguments……………………………………..    20

                A)      Rule 12(b)(1)………………………………………...    22

                B)      Rule 12(b)(6)…………………………………………..    28

                C)      "First to File"………………………………………..    29

                D)      Exhaust……………………………………………………    31

                E)      Rule 9(b) "Particularity"……………………………    33

        Part III  Adequately Pleading a Violation of the
                False Claims Act……………………………………………..    36

                A)      Governing Circuit Law on "False or Fraudulent
                        Claims" under the False Claim  Act………………..    36

B)      The Falsity of Defendants' Claims…………………     37

Conclusion……………………………………………………………….     41

**Table of Authorities**

## Cases

United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,
    985 F.2d 1148 (2d Cir. 1993)............................................................................... 10

Acito v. IMCERA Group, Inc.,
    47 F.3d 47, 51 (2d Cir. 1995)............................................................................... 38

APWU v. Potter,
    343 F.3d 619, 623 (2d Cir. 2003) (citation omitted)............................................. 28

Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,
    968 F.2d 196, 198 (2d Cir. 1992).......................................................................... 29

Aurecchione v. Schoolman Transp. System, Inc.,
    426 F.3d 635, 638 (2d Cir. 2005).......................................................................... 27

Bernstein v. Crazy Eddie,
    702 F. Supp. 962, 976 (E.D.N.Y. 1988) .............................................................. 37

Carlson v. Principal Fin. Group,
    320 F.3d 301, 305-06 (2d Cir. 2003) .................................................................... 28

Chiniah v. Garcia,
    2001 Conn. Super LEXIS 2643 ............................................................................ 21

Conley v. Gibson,
    355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)......................................... 31

Cooper v. Pickett,
    137 F.3d 616, 627 (9th Cir. 1997). ..................................................................... 38

Dileo v. Ernst & Young,
    901 F.2d 624, 627 (7th Cir. 1990)). ................................................................... 37

Dr. Judy Wood ex rel. United States of America v. Applied Research Assocs. Inc., et al.
    1:07cv3314, (GBD)................................................................................................. 8

Gelles v. TDA Indus., Inc.,
    No. 90 Civ. 5133, 1991 WL 39673 *6 (S.D.N.Y. 1991) ...................................... 37

Gold v. Morrison-Knudsen Co.,
    68 F.3d 1475 (2d Cir. 1995)...................................................................... 10

Gold v. Morrison-Knudson Co.,
    68 F.3d 1475, 1477 (2d. Cir. 1995)............................................................. 23

Gold v. Morrison-Knudsen Co.,
    68 F.3d 1475, 1477 (2d Cir. 1995).  Rule 9(b) .......................................... 36

Hagood v. Sonoma Co. Water Agency,
    81 F.3d 1465, 1478 (9th Cir. 1996). ........................................................ 41

ICOM Holding, Inc. v. MCI Worldcom,
    238 F.3d 219, 221 (2ndCir 2001). ............................................................. 22

In re Cardiac Devices Qui Tam Litig.,
    221 F.R.D. 318, 333 (D. Conn. 2004)......................................................... 37

In re Cardiac Devices Qui Tam Litig.,
    221 F.R.D. 318, 333-34 (D. Conn. 2004) ................................................... 37

In re Tamoxifen CitrateAntitrust Litig.,
    466 F.3d 187, 200 (2d Cir. 2006),.............................................................. 39

Kennard v. Comstock Resources, Inc.,
    363 F.3d 1039, 1043 (10th Cir. 2004) ........................................................ 43

Kreindler,
    985 F.2d at 1153-54. ................................................................................. 10

Mikes v. Straus,
    274 F.3d 687 (2d Cir. 2001)....................................................................... 10

Payne v. United States,
    247 F.2d 481, 486 (8th Cir. 1957) ........................................................... 37

Poodry v. Tonawanda Band of Seneca Indians,
    85 F.3d 874, 887 n.15 (2d Cir. 1996)......................................................... 27

Rockwell Int'l Corp. v United States,
    127 S. Ct. 1397, 1407; 167 L. Ed. 2d 190, (2007).................................... 31

Rockwell Int'l Corp. v United States,
    127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007) ............................................. 18

Rockwell Int'l Corp. v United States,

127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007)............................................................ 28

Rockwell Int'l Corp. v. United States,
   127 S.Ct. 1397 (2007)............................................................ 21

Salt Inst. v. Thompson,
   440 F3d 156 (4th Cir. 2006). ............................................................ 35

Scheuer v. Rhodes,
   416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)..................... 27

John Doe,
   960 F.2d at 323 ............................................................ 19

Shipping Fin. Servs. Corp. v. Drakos,
   140 F.3d 129, 131 (2d Cir. 1998)............................................... 27

Twombly v. Bell Atl. Corp.,
   425 F.3d 99, 106 (2d Cir.2005)............................................... 39

U.S. ex rel. Alcohol Found. Inc. v Kalmanovitz Charitable Found. Inc.,
   186 F.Supp2d 458 (SDNY 2002) ............................................. 30

U.S. ex rel. Anti-Discrimination Center v. Westchester County.
   2007 U.S. Lexis 50589 *7 (SDNY 2007) .................................... 29

U.S. ex rel. Anti-Discrimination Center v. Westchester County,
   2007 U.S. Lexis 50589 *7 (SDNY 2007). ................................... 31

U.S. ex rel. Dick v. Long Island Lighting Co.,
   912 F.2d 13, 17 (2d Cir. 1990)............................................... 43

U.S. ex rel. Pentagen Technologies Intern. Ltd. v. CACI Intern., Inc.,
   1996 WL 11299, *9-10 (S.D.N.Y. 1996) .................................. 43

U.S. ex rel. Pentagen Techs. Int'l Ltd. V. CACI Int'l Inc.,
   172 F.3d 39 (2nd Cir. 1999)............................................... 33

U.S. ex rel. Springfield Terminal Railway Co. v. Quinn,
   14 F.3d 645, 651 (D.C. Cir. 1994) ......................................... 9, 42

U.S. v. Catholic Healthcare W.,
   445 F.3d 1147, 1152 (9th Cir. 2006) ...................................... 42

United States ex rel. Barmak v. Sutter Corp.,
   No. 95 Civ. 7637, 2002 WL 987109 at *5 (S.D.N.Y. May 14, 2002)...................................... 36

United States ex rel. Dick Long Island Lighting Co.,
    912 F.2d 13, 18 (2nd Cir. 1990)..................................................18

United States ex rel. Dick Long Island Lighting Co.,
    912 F.2d at 16 ..........................................................................18

United States ex rel. Dick v. Long Island Lighting Co.,
    912 F.2d 13 (2d Cir. 1990)......................................................10

United States ex rel. Doe v. John Doe Corp.,
    960 F.2d 318 (2d Cir. 1992)....................................................10

United States ex rel. Doe v. John Doe Corp.,
    960 F.2d 318, 323 (2d Cir. 1992).............................................42

United States ex rel. Findley v. FPC-Boron Employees' Club,
    323 U.S. App. D.C. 61, 105 F.3d 675, 686-88 (D.C. Cir. 1997)................34

United States ex rel. Karvelas v. Melrose-Wakefield Hospital,
    360 F.3d 220, 231 (1st Cir. 2004)............................................38

United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,
    985 F.2d 1148, 1152 (2d Cir. 1993)..........................................41

United States ex rel. LaCorte v. Smith-Kline Beecham Clinical Labs., Inc.,
    149 F.3d 227, 232-34 (3d Cir. 1998). .......................................33

United States ex rel. Lujan v. Hughes Aircraft Co.,
    243 F.3d 1181, 1189 (9th Cir. 2001) .........................................33

United States ex rel. Olloh-Okeke v. Home-Care Services, Inc.,
    No. Civ.A. 3:97-CV-2738-H, 1999 WL 222356 at *2 (N.D. Tex. Apr. 9, 1999). ...................37

United States ex rel. Phipps v. Comprehensive Community Development Corp.,
    152 F. Supp. 2d 443, 454-55 (S.D.N.Y. 2001) .........................36

United States ex rel. Springfield Terminal Ry. v. Quinn,
    304 U.S. App. D.C. 347, 14 F.3d 645 (D.C. Cir. 1994), .......................33

United States ex rel. Yannacopolous v. General Dynamics,
    315 F. Supp. 2d 939, 944-45 (N.D. Ill. 2004).........................37

United States v. New York Medical College,
    252 F.3d 118 (2d Cir. 2001).....................................................10

United States v. Space Hunters, Inc.,
    429 F.3d 416, 425-26 (2d Cir. 2005) ........................................................... 28

United States v. Warnings,
    No. Civ. A. 93-45411994, WL 396432 at *2 (E.D. Pa. July 26, 1994). .................... 38

## Statutes

31 U.S.C. @ 3732 ...................................................................................... 10
31 U.S.C. § 3729 ...................................................................................... 35
31 U.S.C. § 3730 (e)(3) .............................................................................. 35
31 U.S.C. § 3730(b)(5). .............................................................................. 32
31 U.S.C. § 3730(e)(2). .............................................................................. 34
31 U.S.C. § 3730(e)(4)(A) and (B) ............................................................... 26
31 U.S.C. § 3730(e)(4)(A), ......................................................................... 33
31 U.S.C. § 3730(e)(4)(B) .......................................................................... 17
31 U.S.C. at 3729(a) ................................................................................. 40
31 U.S.C. at 3729(b). ................................................................................ 40
31 U.S.C. at 3730 (e)(4). ............................................................................ 43
31 U.S.C. at 3730 (e)(4)(A) ........................................................................ 10
31 U.S.C. at 3730 (e)(4)(B) ........................................................................ 42
31 U.S.C. at 3730(e)(4)(A). ........................................................................ 43
31 U.S.C. at 3730(e)(4)(B) ......................................................................... 43
31 U.S.C. at 3730(e)(4). ............................................................................. 41
31 U.S.C. Section 3729 .............................................................................. 39
False Claims Act 31 USC § 3730 ................................................................. 12
False Claims Act, 31 U.S.C. § 3729 et seq. .................................................... 6
False Claims Act, 31 U.S.C. § 3730(e)(4)(A), ................................................. 6
Springfield, 14 F.3d at 652 ......................................................................... 33

## Other Authorities

The History and Development of Qui Tam, 1972 Wash.U. L.Q. 81, 86-87 ................... 9
63 Fed. Appx. 548 .................................................................................... 33
Black's Law Dictionary .............................................................................. 26
False Claims Act Litigation, GAO-06-320R (Jan. 31, 2006), ............................... 10
John T. Boese, Civil False Claims and Qui Tam Actions 1-6 (1993) ....................... 9
NCSTAR 1 ......................................................................................... passim
Section 515 of the Treasury and General Government Appropriations Act
    for Fiscal Year 2001 (Public Law 106-554) ................................................. 16
U.S. App. LEXIS 7901 ............................................................................... 33

**Rules**

31 U.S.C. § 3730(e)(4)(A) ................................................................. 14, 17, 26

Rule 12(b)(6) ........................................................................................... 31

F.R.Civ P Rule 9(b) ................................................................................ 12

F.R.Civ P. Rule 12(b)(1) ........................................................................ 12

F.R.Civ.P Rule 12(b)(1) .......................................................................... 25

F.R.Civ.P Rule 42 ................................................................................... 24

F.R.Civ.P Rules 9(b), 12(b)(1), 12(b)6 and 12(h)3. ............................... 14

Fed. R. Civ. P. 12(b)(1) .......................................................................... 25

Fed. R. Civ. P. 9(b) ................................................................................. 36

FRE 801(d)(2) ......................................................................................... 20

Rule 12(b)(1) ................................................................................. 14, 25, 27

Rule 9(b) ................................................................................................. 15

x

OVERVIEW

*"The right to search for truth implies also a duty;*
*one must not conceal any part of*
*what one has recognized to be true."*
*-Albert Einstein*

This case involves the knowing presentation of false certifications, consisting in false, misleading and deceptive simulations, reports, analyses, computer programming, metals testing, other similar and dissimilar professional services, claims and requests for payment by these defendants, and/or the willful blindness and/or willful indifference to fraud, fraudulent use of their expertise in support of an iconoclastic, tragic and historically unprecedented event that they were charged with providing professional and technical support in the investigation in furtherance of determining what had happened. They did not determine what happened to the World Trade Center complex on the morning of September 11, 2001; instead, they fraudulently lent their collective expertise to further a fraudulent explanation of the event. In particular, the claim is that the defendants knowingly participated in the fraud of furthering the false claim that two wide-body 767 jetliners hit the World Trade Center (WTC) on 9/11/01 (9/11). That claim is false and the defendants knew it or were willfully blind and/or indifferent in their professional capacities so as to further the fraud and participate in it, rather than expose it. By virtue of their contracts, they had an obligation to perform work in a non-fraudulent manner. They were not obliged to accept the contracts they accepted. Once they did so, however, they were obliged not to engage in fraud. Their position is not entirely one without sympathy. Had the defendants herein done what they should have done then they, rather than plaintiff, would have exposed fraud of a nature that has stunning implications. Defendants, like virtually everyone else, may have been under pressure to conform to the standard version of events. However, they could not

1

do that without engaging in fraud.  Thus, they should have rejected the contracts or bailed out in time.  They did not do any of the things they could have done to avoid liability.  Now this.

As a result of the individual and collective fraud of the defendants, and each of them, a false and fraudulent report on what happened was issued by the National Institute of Standards and Technology (NIST), which relied on and which publicized the fact that the defendants herein participated in the preparation of that report.  Participation of the defendants was used to buttress the authenticity of the report and make it appear as if it was not fraudulent, when, in fact, it was and it is.  That false and fraudulent report and its sub-parts are collectively entitled ""Final Report on the Collapse of the World Trade Center Towers - NCSTAR 1 (NCSTAR1)[1] issued in or about the month of October, 2005 (scheme).  The scheme has elements in common with what happened when Orson Wells broadcast "The War of the Worlds" in 1938.

In the former instance, the world was not invaded by Martians, even though, as a result of the power of the mass communications entity of radio, many millions of people believed an invasion had occurred.  On 9/11, billions of people were led to  believe that two wide-body 767 jetliners crashed into the then Twin Towers of the World Trade Center in lower Manhattan, in the City and State of New York.

We have yet to find out what actually happened, in part because the defendants herein knowingly or with callous and fraudulent indifference to the truth of the matter, sought only to help perpetuate the fraud, collect money for it and lend their respective corporate name-brands for excellence in their respective fields to help further perpetuate this new version of "The World of the Worlds" that was to lead to "The War on Terror."

---

[1] The final report is 298 pages and is too text-intensive to be incorporated herein in either digital or text form.  Plus the said report is supplemented by more that 10,000 pages of additional text, charts, simulations, analysis, etc. that likewise cannot be dealt with adequately at this preliminary stage of the proceedings.  Discovery is necessary.  However, the report and all of its subparts are deemed incorporated herein by reference and may be found at: http://wtc.nist.gov/reports_october05.htm

This case is not a challenge to the entire panoply of what happened on 9/11, let alone in its aftermath.  The scheme giving rise to this case consists solely in the fraudulent work done by the defendants herein in furtherance of making the report issued by NIST  in October 2005 -- NCSTAR 1 --  seem authoritative with respect to the issue of jetliner crashes, when, in fact, it was and it remains fraudulent in that respect.

This case arises under and pursuant to claims of fraud that were originated and painstakingly exposed and presented by plaintiff herein, Dr. Morgan Reynolds, (plaintiff) in information that he is not only the original source of, he also disclosed the information, after which the U.S. Department of Commerce, by and through its Office of Chief Information Officer, published the information.[2]

The administrative remedy that plaintiff could and did invoke is of the type that can be used to satisfy the "original source" requirements of the False Claims Act, 31 U.S.C. § 3730(e)(4)(A), as more fully elaborated hereunder.  NIST is not a party to this lawsuit and the proceedings within NIST are not a civil suit and do not involve civil money penalties, such that they are not a bar to this action, all as more fully set out below.

The defendants herein each had contracts that are more specifically referenced in the annexed affirmation of Jerry V. Leaphart, plaintiff's counsel, totaling approximately and up to $16 million from June, 2003 to the present (the "false claims period."). These actions violate the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA").

Defendant's false claims did not occur in a vacuum. Rather, the false claims and the scheme underlying them occurred in a context involving the preparation by a branch of the U.S. Department of Commerce known as  NIST which had been charged by Congress with determining "why and how the Twin Towers of the World Trade Center" were (sic)

---

[2] http://www.ocio.ds.doc.gov/ITPolicyandPrograms/Information_Quality/Prodo1_002619

destroyed."[3]  NIST did not do that.  Instead, NIST issued a false, misleading and fraudulent document entitled, as mentioned above, NCSTAR1, that relied on, cited and utilized the names of the defendants herein in order to add "authority" "prestige" and "stature" to the false report.

Here is how NIST actually put it in its September 28, 2007 response to plaintiff:

> "The analytical modeling methodologies used by NIST were reviewed by individual subject matter experts who also serve on the National Construction Safety Team Advisory Committee and by experts retained by NIST as consultants. These individuals have all agreed with the approach taken by NIST to analyze the aircraft impact, fire growth and spread, and structural behavior under thermal and structural loads."[4]

The above is a classically stated version of the "bandwagon" fallacy designed to overwhelm us with the number of "experts" NIST relied on.  The nature of the fraud alleged by plaintiff is firmly demonstrated.  Irrespective of the number of experts NIST hired, they committed fraud by allowing the unsustainable myth that wide-body jetliners hit the WTC to be furthered when, in fact, that myth is false because it is physically impossible.  The process used by the defendants herein gives credence to the Daubert process used in legal proceedings because NCSTAR 1 is a classic example of a detailed and thorough and painstakingly prepared by experts report that is also false, useless, misleading and fraudulent.

NIST responded to the specific claims of specific fraud alleged by plaintiff in his RFCs of March 8 and May 1, 2007, in a Response dated September 28, 2007 (RFC Response), (see copy annexed to plaintiff's affidavit as Exhibit D).  That RFC Response is noteworthy for its acknowledgment of plaintiff's claim of fraud.  Here is what it said, in relevant part:

**"You further request that NIST correct NCSTAR1 to disclose the extent to which SAIC is**

---

[3] "On August 21, 2002, with funding from the U.S. Congress through FEMA, the National Institute of Standards and Technology (NIST) announced its building and fire safety investigation of the WTC disaster.  On October 1, 2002, the National Construction Safety Team Act (Public Law 107-231) was signed into law."  NCSTAR 1, pg. xxix, see http://wtc.nist.gov/NISTNCSTAR1CollapseofTowers.pdf

[4] See Affidavit of Morgan Reynolds, Exhibit D RFC Response dated September 28, 2007, pg 2 of 4

**involved with defense contracts, intelligence contracts, directed energy weapons, payment of court ordered fines and psychological operations, as well as acknowledge that undue influence may have been a factor leading to the false, misleading, deceptive and fraudulent conclusions that you assert were reached and published in NCSTAR 1."** See annexed Affirmation of Jerry V. Leaphart, par. 2

There is no way to read the above other than that which includes an acknowledgment that NIST *did not and has not even denied plaintiff's claims of fraud.* At most, NIST has purposefully allowed the issue of the claim of fraud to remain an open one. That is why this is the proper forum and proper procedure for that inquiry and for that test. All else that follows in this Memorandum of Law may be merely elaboration and detail. The above quote from the NIST response should be outcome determining, confirming that this court has jurisdiction over this qui tam claim.

The essential analogy between what happened here and what informs this case and that of the earlier mentioned episode in mass deception, that of "The War of the Worlds," involved the use of television ("teevee") imagery, and teevee auditory capabilities (like that of radio of yesteryear) to claim that the images depicted in the annexed affidavits are real and actual, when, in fact, the images are false and fraudulent. As noted in the affidavit of retired pilot, John Lear, son of LearJet founder, Bill Lear, 767 jetliners could not perform at the speed depicted in the video, much less silently maneuver as the videos of the event would have us believe occurred. Among the defendants herein are those who know that as well as John Lear does.

Society at large, meaning the masses of all of us ordinary people, may be excused for being deceived by the 9/11 ruse. Millions were in 1938 when the event only involved radio. On 9/11, not only did the event involve visual imagery, it also involved sophisticated and utterly lethal and catastrophic realities. Additional elements of fraud have been separately identified and put forward in a separate claim by another qui tam relator, Dr. Judy Wood, who challenges

NIST and NCSTAR 1 on completely different grounds.  Dr. Judy Wood ex rel. United States of America v. Applied Research Assocs. Inc., et al. 1:07cv3314, (GBD) (Wood_v. ARA).

This case involves the fraud perpetrated by the jetliner crash hoax.  Annexed hereto is the Affidavit of the plaintiff, Dr. Morgan Reynolds (plaintiff), that fully articulates facts and circumstances detailing the nature of the jetliner imagery fraud.  That affidavit is supported by additional affidavits from those who, as this case unfolds, will provide expert witness testimony. They include, but are not limited to, the affidavit of Mr. John Lear, mentioned above.

The service to the public interest advanced by the plaintiff relator herein is unique in the sense that he has satisfied the requirements for being an "original source" such that this court has jurisdiction over the claim.  He is not, however, the only person who realizes that fraud occurred.  But   he is one of few who have acted upon it.  There are those among defendants who could done so in all likelihood, but who have yet to say what they know.  That is what discovery will be for.  And, based on the written admission from defendant ARA, discussed infra, we already have reason to believe there are those who are willing to talk.  As indicated, there is at least one other qui tam case pending that makes separate and distinct claims of fraud also arising out of NCSTAR 1.

STATUTORY AND REGULATORY FRAMEWORK

A. The False Claims Act

Recognizing that the federal government did not have enough "eyes and ears" to monitor the honesty of federal contractors, Congress first enacted the FCA in 1863 to create incentives for private citizens to help ferret out false claims and fraud against the federal government. U.S. ex rel. Springfield Terminal Railway Co. v. Quinn, 14 F.3d 645, 651 (D.C.

Cir. 1994).  These so-called qui tam[5] actions are brought in the name of the United States by a

relator, who is given statutory standing to bring such a claim under carefully circumscribed

conditions.  United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d

1148, 1154 (2d Cir. 1993).  Congress has attempted to balance these incentives against the

possibility of "parasitic lawsuits," id., in which putative relators add nothing to what the federal

government already knows or has uncovered about a contractor's fraudulent submission of

claims.[6]

While defendants seek in many ways to castigate plaintiff's FCA claims, they do not

claim that plaintiff has engaged in a "parasitic" complaint; nor could they.  Plaintiff

painstakingly, and in considerable detail, brought forward his information claiming fraud in the

RFCs that are annexed hereto and made a part hereof.  NIST then published his information and

responded to it.  The action that plaintiff wants the governmental agency, NIST, to take is still

under consideration, including response to a Freedom of Information Act (FOIA) request; see

plaintiff's affidavit.

Over the last 20 years, federal courts have entertained an increasing number of qui tam

actions under the FCA.[7]  This case fits well within that paradigm.

---

[5] See Quinn, supra, 14 F. 3d at 647, n. 1 ("Qui tam is an abbreviation for qui tam pro domino rege quam pro seipso, which means 'he who as much for the king as for himself.' John T. Boese, Civil False Claims and Qui Tam Actions 1-6 (1993).  Historically, all qui tam actions have shared the common features of allowing private parties to initiate suit to enforce the laws in the government's stead and awarding victorious plaintiffs part of the recovery as bounty. See Note, The History and Development of Qui Tam, 1972 Wash.U. L.Q. 81, 86-87.")

[6]  The statute permits a relator to maintain an action, whether or not the U.S. Government chooses to join the litigation, and to secure a percentage of the proceeds recovered for the Government. 31 U.S.C. @ 3732.

[7] See, e.g., Mikes v. Straus, 274 F.3d 687 (2d Cir. 2001)(submission of Medicare claims); United States v. New York Medical College, 252 F.3d 118 (2d Cir. 2001)(medical billing practices); Gold v. Morrison-Knudsen Co., 68 F.3d 1475 (2d Cir. 1995)(cost overruns on government housing construction projects); United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148 (2d Cir. 1993)(safety certifications for military aircraft); United States ex rel. Doe v. John Doe Corp., 960 F.2d 318 (2d Cir. 1992)(billing practices under defense contracts); United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13 (2d Cir. 1990) (construction of a nuclear power station). See also U.S. Government Accountability Office, Information on False Claims Act Litigation, GAO-06-320R (Jan. 31, 2006), available at http://www.gao.gov/new.items/d06320r.pdf. (last accessed May 23, 2007). While many qui tam actions are brought by corporate insiders or "whistle blowers," the statute does not require such a status.  Rather, the standing provisions of the FCA are as broad as Article III of the Constitution

## PROCEDURAL HISTORY

Relator filed a so-called Request for Correction (plaintiff's affidavit, Exhibit A) on March 8, 2007, supplemented on May 1, 2007, (plaintiff's affidavit, Exhibit B) that served to provide the Government with information of fraud wherein plaintiff outlined the nature of the fraud that had been committed by NIST and its contractors in NCSTAR 1, as more particularly asserted above, as that fraud related to the issue of assuming jetliners crashed into the WTC on 9/11.  On September 28, 2007, NIST published its response to plaintiff's said RFC and on October 26, 2007, plaintiff appealed (plaintiff's affidavit, Exhibit E).  Other proceedings continue within NIST involving plaintiff's FOIA request.  (plaintiff's affidavit, Exhibit G). During the false claims period, each of the defendants herein entered into a series of contracts that are generally referred to in the complaint and that are more particularly mentioned in the annexed affirmation of Jerry V. Leaphart.

Relator filed this action, under seal and pursuant to the requirements of the FCA on May 31, 2007. After the statutory period and an extension, the U.S. Department of Justice ("DOJ") provisionally declined to intervene, and this case was duly unsealed by order of this court. Relator served the complaint on defendants on or about August 15, 2007 and on October 5, 2007.

No discovery has been had in this matter.

## THE MOTIONS TO DISMISS

Defendants' herein have prepared motions to dismiss falling into four groups with three groupings which will be addressed.  A fourth was filed by a defendant no longer in the case.

---

permits. Kreindler, 985 F.2d at 1153-54. Further, while the FCA bars qui tam actions that are "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [Accountability] Office report, hearing, audit, or investigation, or from the news media," 31 U.S.C. at 3730 (e)(4)(A), it most certainly does not define information submitted under and pursuant to the Information Quality Act, in RFCs within that category.

This memorandum will treat the issues presented by all three groupings, noting where they overlap and where they diverge, one from the other, where necessary.  In their respective memoranda the defendants urge a total of fourteen (14) points.  The aggregate groupings are as follows:

1-- Simpson, Gumpertz & Heger, Inc and Computer Aided Engineering Associates, Inc (SGH/CAE), in which defendant Gilsantz Murray, Steficek LLP (GMS) joins[8]; and

2--.Skidmore, Owings & Merrill, LL (SOM), and

3—Applied Research Associates, Inc (ARA), joined in by Wiss, Janney, Elstner Associates, Inc. (WJE), Rolf Jensen & Associates, Inc (RJA), Underwriters Laboratories, Inc.  (UL),  Hughes Associates, Inc.  (Hughes) and Teng & Associates, Inc. (Teng).

If treated separately, the fourteen points raised by defendants would result in needless repetition because of overlap, to a certain degree.  However, the arguments of defendants, looked at in their three groupings, also diverge one from the other in important respects and, to a certain degree, the arguments of some defendants contradict and, indeed, refute, those of other defendants.

There are four points of general agreement between the defendants that entail an affirmative proof obligation by plaintiff.  They are:

1- Under F.R.Civ P. Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence;

2- Under F.R.Civ P Rule 9(b) fraud has to be pled with "particularity;"

3- The common law counts are not proper in this case; and

4- The defendants assert entitlement to attorneys fees because they assume they will prevail on their motions to dismiss.

Plaintiff's Argument section will be in three parts.  Part I will first demonstrate that the defendants, by virtue of taking divergent approaches to the FCA's original source requirement have, in fact, all but conceded that plaintiff is an original source.  Plaintiff will then affirmatively argue, in Part II that:

1)  Plaintiff satisfies the affirmative duty of demonstrating that he is an "original source" within the meaning of the False Claims Act 31 USC § 3730(e)(4)(A) and (B); confirms that he satisfies the "First to File" rule; and proves that he properly presented information to the "Government" (exhaustion issue).

2)  Plaintiff proves that he has pled sufficient particularity, as per binding 2nd Circuit authority on the subject.

3)  Plaintiff confirms that he has already indicated that the common law counts are to be dismissed and will reiterate the point here.

4)  Plaintiff will acknowledge that the common wisdom might not have relied on the court system to bring this claim, but doing so would have entailed the same inherent cynicism and arrogance manifested by the defendants herein.  They are not entitled to fees.  Unlike instances involving military officers who have questioned 9/11, Rule 11 does not have an arbitrary provision requiring the non-questioning of persons in authority about their actions concerning the events of 9/11.  Rule 11 also does not mandate that fraud go unchallenged.[9]

Part III will treat the overall issue of "adequacy" of plaintiff's complaint under the FCA at the motion to dismiss stage, separate and apart from the various and contradictory claims put

---

[9] See affirmation, paras. 3 to 8.

forward by the defendants multiple, but inconsistent, dismissal arguments so as to confirm, once and for all, that he is an "original source" and that this court has jurisdiction over his claim.

There exists an abundance of evidence confirming the correctness of plaintiff's claims of fraud, and plaintiff has laid a perfectly proper foundation for this qui tam action, with sufficient particularity.  However, plaintiff and his undersigned counsel would be naïve not to recognize that the potential ramifications of the claims made herein are astounding.  However, that is an expression confirming the unusual nature of the case, which cannot be allowed to color or otherwise affect its legal underpinnings.  The defendants herein and their counsel may well be required, during discovery, to be forthcoming in the acknowledgment that fraud did, in fact, occur.  There is already one, binding admission to that effect discussed infra.

As a result of all of the foregoing, and in all candor, the only issue that remains is one that is unstated, but implied.  That issue consists in the need to acknowledge the existence of the broader implications of this case.  If plaintiff is correct, then 9/11 was a crime of unprecedented magnitude with implications that are troubling and potentially far reaching.  That may well be the reason why military personnel are said to be prohibited from questioning 9/11.  It is only because of our belief in the vigorous impartiality of the court system of the United States of America that plaintiff and plaintiff's counsel have elected to proceed with this case.  Once again, we are neither naïve nor unmindful of Rule 11.  We here add that so far we are quite satisfied that this case is being handled just as any other case would be, without exception and without the slightest deviation from legal norms.

## STANDARD OF REVIEW ON MOTION TO DISMISS

Rule 12(b)(1)

The defendants in all of the groupings allege entitlement to have plaintiff's complaint dismissed citing F.R.Civ.P Rules 9(b), 12(b)(1), 12(b)6 and 12(h)3).

The defendants assert that Dr. Reynolds cannot satisfy the "original source" rule arising under 31 U.S.C. § 3730(e)(4)(A).   They then state, in substance, that:

> 1-"Reynolds has provided no factual basis in his Complaint to support the FCA statutory requirement that he must be the original source of the information forming the basis for his FCA claims."[10]

As a matter of fact, that assertion is inaccurate, to put it no more harshly than that, because plaintiff's complaint at para. 15, pg. 8 (Docket # __), thereof, plainly and unequivocally states as follows:

> "The causes of action alleged herein are timely brought on the basis of the filing of relator's complaint in this action within either six (6) years of the events of 9/11/01 or within two (2) years of the issuance by NIST of its final report entitled NCSTAR 1, which was issued in or about the month of October 2005, and wherein relator filed the March 8 RFC and the Supplement thereto in which relator provided specific original source information concerning the nature of the fraud committed and the capacity of certain of the defendants to have knowingly engaged in that fraud…". (Plaintiff's complaint, pg. 8, para. 15, lines 1 through 7)

Thus, the very first "fact" that can be asserted is that plaintiff's complaint provides a factual basis to support the FCA statutory requirement that he must be the original source of the information forming the basis for his FCA claims, contrary to defendants' contentions.

The defendants also collectively claim, in substance, that:

> 2-"Additionally, Reynolds' Complaint should be dismissed under Rule 12(b)(6) because he has failed to provide sufficient detail about his theory of FCA liability, or about any specific fraudulent claim, and has therefore failed to provide the requisite particularity under the heightened pleading standard of Rule 9(b)…"

---

[10] See defendants' Memorandum of Law pg. 2.

That assertion is likewise inaccurate, again putting it politely.  There is nothing unclear or unequivocal or lacking in particularity in, by way of example, paragraph 33 of plaintiff's complaint wherein it is asserted that:

> "Their individual and collective expertise, and that of their employers, could have been, but was not, used for purposes of calling attention to the fact that the effects seen and left by the pattern of destruction of WTC1,2 could not have been caused by jetliner impacts. Instead, defendant chose to use its expertise to commit fraud based on either withholding information or manipulating information and by then accepting payment improperly. "(Plaintiff's complaint, para. 33, line 7 to end)

It is true that some paragraphs pertaining to some defendants do not contain the specific language found in paragraph 33; however, that is a circumstance that can be rectified by amendment process.  Moreover, the language of paragraphs 2 to 5, inclusive, are sufficient in an overall sense to inform defendant CAE of what it is called upon to defend.

The SGH grouping of defendants presuppose as a legal given that:

3-"[plaintiff] has failed to identify even a single specific instance of the defendants SGH or CAE submitting a fraudulent bill to the government, and therefore the Complaint lacks the detail and specificity required by Rule 9(b)."

In response, plaintiff avers that the presumption that a complaint must provide a copy of a bill to the government is not what is meant by "particularity" all as more fully argued hereunder.

The SGH defendants next claim in their Introduction that:

4-"Dr. Reynolds' FCA claims should be dismissed under Rule 12(b)(1) and (h)3) because they are based upon the same information which is presently pending before (sic) NIST in the form of a (sic) RFC and Reynolds has failed to exhaust the administrative process established by NIST for challenging the quality of information disseminated by that federal agency."

It is curious that defendants would set forth the very information upon which plaintiff stakes out his claim of satisfying the original source requirement in a way that seemingly and openly *admits* that plaintiff is the original source of information alleging fraud; only to then conclude that plaintiff did not exhaust his administrative remedy.

Firstly, the Information or Data Quality Act (IQA)[11], does not provide for money damages which, as articulated below, if it did, that might, in fact, serve to preclude a claim under FCA.  So, because the IQA does no such thing, that administrative process is not a bar to an FCA claim; instead, it is ideally suited for serving as a possible platform for bringing false claims actions.

Secondly, the original source segments of the FCA, 31 U.S.C. § 3730(e)(4)(A), by the literal content thereof, does not require or even refer to exhaustion of administrative remedy and there is no reported case that has been cited by defendants (or found by us) stating otherwise. The FCA merely requires, in relevant part, that the claimant ***"has voluntarily provided the information to the Government before filing an action."[12]***  In filing his RFC, claiming fraud, plaintiff, Dr. Morgan Reynolds has done exactly that.[13]

All defendants assert something that had merit; namely, the assertion that plaintiff did not have standing to include "common law" counts in his complaint.  Those counts have been voluntarily dismissed with respect to those defendants who have requested and an offer to do so has been extended to all others, based upon the consent of the parties pursuant to stipulation. The common law counts are not intended to be a part of this action any longer.  In addition, plaintiff contemplates filing an amended complaint that will likewise not include those counts.

---

[11] Section 515 of the Treasury and General Government Appropriations Act for Fiscal Year 2001 (Public Law 106-554)

[12] 31 U.S.C. § 3730(e)(4)(B)
[13] Dr. Reynolds' RFC specifically invokes the FCA, see pg 2 of 4 of RFC supplement dated May 1, 2007, annexed as Exhibit A to the complaint and Exhibits A and B of plaintiff's annexed affidavit.

ARGUMENT

Part I.

Rather than entitlement to a ruling in their favor, not to mention attorneys' fees, the

defendants are hopelessly confused between and among themselves as to the requirements for

satisfying the FCA's "original source" requirement based, in part, on one defendant's (SOM)

failure even to mention, much less include an assessment of, the U.S. Supreme Court's binding

determination issued in March, 2007, in the case entitled <u>Rockwell Int'l Corp. v United States</u>,

127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007)[14].  A second grouping provides what plaintiff will

contend are multiple judicial admissions that plaintiff herein is an original source and that fraud

has occurred[15].  The third grouping of defendants, though aware of <u>Rockwell Int'l Corp v. U.S.</u>,

supra, nonetheless engage in legal analysis as though Rockwell does not mean what it says[16].

The defendants herein have not substantiated that they are entitled to dismissal of this

action at this early stage, without discovery, precisely because of the confusion, admissions and

contradictions between and among them on the vital question of the FCA's "original source"

requirement.

A) Skidmore, Owings & Merrill (SOM):

A review of the Memorandum of Law (Docket # 27) filed on behalf of SOM confirms

they did not cite and do not rely on the U.S. Supreme Court's precedent setting case of

<u>Rockwell Int'l Corp. v United States</u>, supra, 127 S. Ct. 1397.  As a result, SOM then commits

the analytic error of relying on older, overruled, precedent in support of the discarded

contention that "[r]elator has no first hand or direct knowledge…" citing <u>United States ex rel.</u>

---

[14] See Docket # 27 Memorandum of Law, on behalf of Skidmore Owings and Merrill, pgs. ii-iii, table of cases.
[15] See Docket # 39 Memorandum of Law, on behalf of Applied Research Associates Inc., pgs. 9-10 and 14.
[16] See Docket #23 Memorandum of Law, on behalf of Simpson Gumpertz & Heger Inc. pg. 14

Dick Long Island Lighting Co., 912 F.2d 13, 18 (2nd Cir. 1990).  Clear error results from the

reference to said case because that case affirmatively states:

> "A close textual analysis combined with a review of the legislative history convinces us
> that under §3730(e)(4)(A) there is an additional requirement that a qui tam plaintiff must
> meet in order to be considered an "original source," namely, a plaintiff also must have
> directly or indirectly been a source to the entity that publicly disclosed the allegations on
> which a suit is based." United States ex rel. Dick Long Island Lighting Co., 912 F.2d at
> 16.

This requirement has been eliminated, as was expressly admitted by defendant Applied

Research Associates Inc. (ARA) in their Memorandum of Law, at footnote 8 thereof, pg 14 of

Docket #39.

Plaintiff, Dr. Morgan Reynolds, is the original source of his Requests for Correction

(RFC) filed on March 8, 2007 and May 1, 2007, respectively with NIST, who then publicly

disclosed them.  That is the information upon which the "original source" requirement is to be

assessed; all as defendant ARA has, in fact, further admitted; albeit, in an around about, and

factually erroneous way.  Defendant, ARA, has in fact staked its claim that Dr. Judy Wood is

the original source by virtue of her having filed with NIST, as did plaintiff Dr. Reynolds.

However, where ARA errs is that they apparently did not realize two things:

1. Plaintiff Reynolds filed with NIST first, not second; and,

2. Wood, irrespective of filing her qui tam lawsuit first, does not claim that no wide-

body jetliners hit the WTC.  That is plaintiff, Reynolds' claim and his alone.

This is significant.  ARA factually admits that filing RFC's can  serve to satisfy the

original source requirement.  ARA's admission is a judicial admission, as hereinafter

articulated.  Here is the language of that admission:

> "Furthermore, the allegation that no aircraft struck the WTC Towers and that "Directed
> Energy Weapons" ("DEW") caused the collapse of the WTC Towers was publicly
> disclosed during NIST's Investigation.  On March 16, 2007, Dr. Judy Wood submitted a
> Request for Correction ("RFC") of NCSTARl asserting it was "fraudulent, misleading or

deceptive" because it erroneously concluded that aircraft impacts cause the collapse of the WTC Towers. *See* Affidavit ¶ 6, Exhibit C, Request for Correction from Dr. Judy Wood to Nat'l Inst. Of Standards & Tech. (Mar. 16, 2007), p. 43. Dr. Wood asserts that her RFC contains information "confirming the existence of significant evidence of 'Unusual energy impacts' that are consistent with Directed Energy Weapons (DEW) having been used as a causal factor in the destruction of the World Trade Center complex on 11 September, 2001". *Id.* As this RFC was submitted pursuant to an "administrative … investigation" and is publicly available on the internet, it constitutes a public disclosure under §3730(e)(4)(A). *See John Doe*, 960 F.2d at 323 (disclosures pursuant to administrative investigations bar FCA claims). Thus, Dr. Wood's RFC publicly disclosed the allegations contained in Relator's Complaint over 2.5 months before Relator filed his Complaint." See pg. 9-10, Docket #39.

The above is a devastating judicial admission[17] precisely because it acknowledges in clear language that the filing of an RFC constituted a public disclosure for FCA purposes. I am not making this up. That is what the defendant admits. What ARA gets wrong, however, is the claim that Dr. Wood's RFC makes the assertion that no jetliners hit the WTC in her RFC. That is false. A review of Dr. Wood's RFC dated March 16, 2007 will reveal that it says nothing whatever about jetliners and makes no claim of fraud in connection therewith. The only indirect mention made in Dr. Wood's RFC to anything remotely pertaining to aircraft has to do with her assumption, for sake of argument, that jetliner crashes occurred, then explaining that kerosene would have been insufficient, as an energy source to have caused the destruction of the WTC. Dr. Wood's only indirect reference to anything having to do with aircraft is this:

> "Indeed, starting with the premise that World Trade Center buildings 1 and 2, the Twin Towers, (WTC1,2) were massive, strongly built structures, made of steel that should not have been significantly harmed by kerosene generated fires (jet fuel is kerosene), should have been apparent to some among the assembled bevy of experts."[18]

Because defendant is demonstrably wrong about what, in fact, Dr. Wood asserted, rather than where and how she asserted it, ARA's acknowledgement that an RFC constitutes a public

---

[17] See FRE 801(d)(2); see also <u>United States v. Duffy</u>, 188 F. Supp. 2d 281, 285 (EDNY 2002 )
[18] RFC of Dr. Judy Wood, submitted to NIST March 16, 2007, see
http://www.ocio.os.doc.gov/ITPolicyandPrograms/Information_Quality/PROD01_002619

disclosure stands as a judicial admission.  What they were wrong about only confirms that Dr.

Reynolds was, as ARA has admitted, such a source.  He filed his RFC before Dr. Wood filed

hers; and, more importantly, he is the only source for the jetliner hoax claim.  (See also

http://www.ocio.os.doc.gov/ITPolicyandPrograms /Information_Quality/PROD01_002619)

That is not something that Dr. Wood disclosed.  The ARA admission stands.

B) ARA

  We have already largely addressed and articulated a judicial admission offered to us by

ARA.  There is more.  In addition to admitting that the RFC process satisfies the public

disclosure requirement of the FCA, ARA goes further and openly admits that the U.S. Supreme

Court, in Rockwell Int'l Corp. v. U.S., supra, does away with the former rule, adhered to

previously in the 2nd Circuit, and quoted above in the SOM section.  ARA's footnote 8 states:

> "Following the Supreme Court's holding in *Rockwell Int'l Corp. v. United States*, 127
> S.Ct. 1397 (2007) that a relator must be an original source of the allegations in his
> complaint rather than the allegations that were publicly disclosed, the third prong of this
> test may no longer be valid law."

  Thus ARA refutes SOM.ARA has also put into writing yet another clear and

unequivocal judicial admission.  In the one next referred to, ARA has admitted wrongdoing in

this case, consistent with fraud.  Annexed to the affirmation of Jerry V. Leaphart as Exhibit 3 is

the admission of wrongdoing consisting in an email communication stating, in relevant part:

  **"To make a long story short ARA is not involved in those things you**

  **allege and even if something was done that was wrong, ARA was a part**

  **of it.**

One hastens to add that ARA might (or might not) seek to assert the quoted admission is

mistaken in the nature of an error in syntax or of a typographical nature.  Whatever.

Admissions are admissions even if one might contend they are a typographical error.[19]  Not only that, this is a whistleblower case.  ARA's admission is no more and no less consistent with typographical error as it is with a psychological "Freudian slip".  Clearly, ARA is precluded at the motion to dismiss phase from contesting the weight of the admission.  At this point, it stands and it is binding.   All inferences from information are to be drawn in favor of the non-moving party.[20]  That would be the plaintiff herein.

In summary, then, ARA has put into writing three admissions that plaintiff herein has articulated and put into the record.  The fair, reasonable and undeniable sum and substance of those admissions can be summarized as follows:

First:

ARA judicially admits that plaintiff, by virtue of filing an RFC, is an original source.

Second:

The Rockwell case does away with the "direct" knowledge requirement previously articulated in the 2nd Circuit and relied on by SOM.

Third:

ARA committed fraud, as per its written admission.

Based upon those three admissions of record, the defendants, each and all of them, but especially ARA and all those who specifically joined in by directly incorporating ARA's memorandum of law, as though written themselves, are bound by the first and the second of ARA's three admissions.  Those two, standing alone, are sufficient to deny the motions to dismiss.  As to the third admission, that of wrong-doing, it may well be that only ARA is bound

---

[19] See, e.g., Chiniah v. Garcia, 2001 Conn. Super LEXIS 2643
[20] "In deciding a  12(b)(6)  motion, a court must accept as true all material facts alleged in the complaint and draw all reasonable  inferences  in the nonmoving  party's  favor."  ICOM Holding, Inc. v. MCI Worldcom, 238 F.3d 219, 221 (2ndCir 2001).

thereby; however, even if by some chance the court does not consider the first two admissions

sufficient, the third one would seem to <u>mandate</u> denial of ARA's dismissal motion as to it.

ARA has admitted wrong-doing.

C) SGH/CAE

Although not as blatant as SOM not having mentioned the Rockwell decision and not

nearly as blatant as ARA's admissions, SGH/CAE nonetheless make it clear that they too err on

the side of misstating the law on the original source requirement post Rockwell.  SGH/CAE also

revert to pre-Rockwell law by stating::

> RFC sets forth 5 pages of specific quotes from NCSTAR which form the basis of his
> claims.  Id.  Ex. A, RFC, p.8.  Because Reynolds had 'no direct and independent
> knowledge of any of this publicly disclosed information, he was not an original source
> of that information, and his suit is barred.'  <u>Gold v. Morrison-Knudson Co</u>., 68 F.3d
> 1475, 1477 (2d. Cir. 1995)."

Thus, even though SGH/CAE reference Rockwell, inexplicably they then rely on that

which Rockwell overruled.  In summary, each and every claim made here has been

substantiated.  Defendants have, between and among them, demonstrated that they are

hopelessly confused, contradicted and effectively refuted.  As a result they have openly

admitted that plaintiff, Dr. Morgan Reynolds, is an original source under the FCA.  This court

has jurisdiction over his claims arising hereunder.  Discovery must be allowed to proceed.

Part II.

AFFIRMATIVE ARGUMENTS

Plaintiff not only asserts that he is correct about his claim that no wide-body 767

jetliners hit the WTC on 9/11/01, he provides an abundance of factual data to support the

claim.[21]  That is the information upon which his claim is based and he is the original source of

---

[21] See annexed affirmation and affidavits.

it.  He is also the only source who has openly challenged the defendants on the basis of the "no jetliners" claim.

The seminal case in this field must now be recognized as being that of <u>Rockwell Int'l Corp. v United States</u>, 127 S. Ct. 1397, supra.  One significant reason why the "first to file" bar is inapplicable here is that the issue of whether a qui tam relator must be correct about the claim of fraud confirms that more than one relator may be permitted to articulate competing claims of fraud or claims that include both aspects upon a consolidated basis.[22]

One can readily make this assertion confidently because it is clearly mentioned in Rockwell:

> "Of course a qui tam relator's misunderstanding of why a concealed defect occurred would normally be immaterial as long as he knew the defect actually existed. But here Stone did not know that the pondcrete failed; he predicted it. Even if a prediction can qualify as direct and independent knowledge in some cases (a point we need not address), it **assuredly does not do so when its premise of cause and effect is wrong.** Stone's prediction was a failed prediction, disproved by Stone's own allegations. As Stone acknowledged, Rockwell was able to produce "concrete hard" pondcrete using the machinery Stone said was defective. According to respondents' allegations in the final pretrial order, the insolidity problem was caused by a new foreman's reduction of the cement-to-sludge ratio in the winter of 1986, long after Stone had left Rocky Flats." <u>Rockwell Int'l Corp. v United States</u>, supra, 127 S. Ct. at 1410.

Plaintiff might or might not be right about his "no jetliner crash" theory.  Plaintiff Wood, in her separate and discreet case, might or might not be correct about her Directed Energy Weapons claim.  Thus, and at this point, we must apply that portion of the decision of Rockwell that states:

> **Even if a prediction can qualify as direct and independent knowledge in some cases (a point we need not address), it assuredly does not do so when its premise of cause and effect is wrong.**

---

[22] The issue of consolidation, under F.R.Civ.P Rule 42 will be elaborated further in the "First to File" segment hereunder.  The ARA grouping places significant reliance upon a very narrow and inaccurate interpretation of the first to file rule arising under the FCA without so much as even acknowledging the possibility of consolidation of cases or of parties, something that is already contemplated by virtue of the assignment of both this case and Wood v ARA to the same judge, Judge Daniels.

Appling the actual <u>Rockwell</u> rationale here, it is, at best, premature to grant a motion to dismiss in this case because, as the record stands, plaintiff's assertions are both <u>facially</u> and <u>factually</u> supported. He might be right; and no defendant here has ever <u>tried</u> to prove otherwise.

The affirmation of David M. Pollack merely restates plaintiff's claim for the most part, adding next to nothing of factual substance. Instead, all it does is reference a non-applicable claim that the administrative remedy has not been exhausted, a claim that is both inaccurate and irrelevant. It is inaccurate because Dr. Reynolds has done all he can at NIST, up to and including an appeal. It is irrelevant because the FCA does not require exhaustion of administrative remedy; rather, it merely requires notice of the information to the Government. Reynolds satisfied that requirement and the defendants herein know that he did because his information is and was made public, all as the ARA group correctly noted at pgs. 9-10 of their brief, in that exactly what they say about Wood also applies to Reynolds separate and independent filing with NIST.

The issue of public disclosure must be understood in the context of "information," a point that the ARA grouping misses entirely. At pgs. 11 -13 of that group's Memorandum of Law, they utterly confuse and conflate the issue of there being some doubts about 9/11 expressed in media and other sources as if that has something to do with the information of fraud in NCSTAR 1 that plaintiff has raised. None of the reports that the ARA grouping references says anything close to "NCSTAR 1 is false, misleading and deceptive because it is based on the false assertion that jetliners hit the WTC and that NIST's contractors engaged in willful fraud and/or willful blindness by presupposing jetliners crashed into the WTC."

A.     *Rule 12(b)(1)*

All defendants articulate a claim of entitlement to dismissal based on F.R.Civ.P Rule 12(b)(1). In considering that rule it is noted that "[t]he question whether subject matter

jurisdiction exists under Rule 12(b)(1) is distinct from the question whether the plaintiff can state a claim for relief under Rule 12(b)(6)."[23]  Defendants also note that "[o]n a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence" (citation omitted).

From there, it is clear that the defendants base their Rule `12(b)(1) challenge on the "original source" requirement arising under 31 U.S.C. § 3730(e)(4)(A) and (B).  The defendants state "[s]pecifically, 31 U.S.C. § 3730(e)(4)(A) divests this Court of subject matter jurisdiction because Reynolds' claims are based upon information of which he was not the original source". That claim is false.

That claim has already been shown to be false because plaintiff unequivocally states in his complaint that he is, in fact, the original source.  The relevant language is found in paragraph 15 of plaintiff's complaint, as quoted above; and, equally relevant, as acknowledged by defendants in the Factual Background segment of their Memorandum of Law wherein they, too acknowledged that  "Reynolds alleges that he is an "original source" of the allegations of fraud set forth in his Complaint…He says that on March 8, 2007, he submitted a Request for Correct ion ('RFC letter') which challenged NCSTAR1 "in its entirety,"… and that this March 8th RFC and the "Supplement thereto" contains the "original source" information."[24]

Facially, then, plaintiff has, by defendants' admission, met the original source requirement rendering defendants' motion to dismiss untenable and certainly without any merit on the crucial "original source" requirement.

---

[23] Defendants' Memorandum of Law pg. 8
[24] Defendants' Memorandum of Law pg. 5

Here, we must say a bit more about the "standard of review" because at this point all we know is that defendants have staked out a claim under Rule 12(b)(1) and have stated that plaintiff has the burden of proof based on the "preponderance" standard; meaning, 50.1% likely versus 49.9% less likely.  Or, as Black's Law Dictionary defines this standard:

> "As standard of proof in civil cases, is evidence which is of greater weight more convincing than the evidence which is offered in opposition to it; that is evidence which as a whole shows that the fact sought to be proved is more probable than not. With respect to burden of proof in civil actions, means greater weight of evidence, or evidence which is more credible and convincing to the mind.   That which best accords with reason and probability. The word "preponderance"  means something more than "weight"; it denotes a superiority of weight, or  outweighing. The words are not synonymous, but substantially different. . . .   It is that degree of proof which is more probable than not. . . .". [25]

We still must address a second issue that defendants are not as clear about as they might be because they do not openly acknowledge the two separate circumstances under which a Rule 12(b)(1) motion can be considered.  It is well settled in the Second Circuit that a Rule 12(b)(1) jurisdictional challenge can be **facial** or **factual.**   Poodry v. Tonawanda Band of Seneca Indians,  85 F.3d 874, 887 n.15 (2d Cir. 1996).  A facial challenge attacks "the sufficiency of the jurisdictional facts alleged," Poodry,  supra, 85 F.3d at 887 n.15, while a factual challenge challenges the facts themselves. Id.

Defendants do not clearly state whether their challenge is the one or the other.  However, since the defendants openly admit that plaintiff asserts in his complaint that he is an "original source" of the information upon which his claims of fraud are made, it seems clear the defendants cannot possibly be submitting a facial challenge.  Instead, their motion has to be deemed one involving a factual claim.

---

[25] BLACK'S LAW DICTIONARY 1182 (6th ed. 1990).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ. P., "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005). However, a court must "accept as true all material factual allegations in the complaint," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

It is also true that in resolving factual challenges to subject matter jurisdiction, the court may consider evidence outside of the pleadings. United States v. Space Hunters, Inc., 429 F.3d 416, 425-26 (2d Cir. 2005). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Aurecchione, 426 F.3d at 638 (citation omitted). The inquiry is distinct from whether the plaintiff can state a claim for relief. Carlson v. Principal Fin. Group, 320 F.3d 301, 305-06 (2d Cir. 2003).

We know, too, that what the defendants essentially seek to do is to confuse, as often happens in Qui Tam cases, the issue of what information is being relied on as the source of the information as being fraudulent. This is, essentially, the issue the U.S. Supreme Court recently provided some clarity on in the case entitled Rockwell Int'l Corp. v United States, 127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007).

The information upon which the original source classification is based is the information submitted by Dr. Reynolds consisting in his RFC letters of March 8, 2007 and May 1, 2007 wherein, just as defendants state: "Reynolds alleges that he is an "original source" of his

allegations because on March 8, 2007, he submitted a Request for Correction letter to NIST which challenged NCSTAR "in its entirety…".

Because we are also in a context where affidavit information may be considered, it is appropriate to conclude this segment by noting that plaintiff substantiates his claim of fraud by essentially providing an affidavit referencing an abundance of evidence that his assertion that NO PLANES hit the WTC on 9/11 is true by a preponderance of evidence.

Annexed to the attorney's affirmation that is a part of this submittal is an article entitled "Muslims Suspend Laws of physics" that was published in October/November, 2001 that confirms that some people, at least, recognized early on that the facts claimed to have occurred on 9/11 were unsubstantiated and unreasonable to begin with.[26]  That affirmation goes on to detail an abundance of additional information that either constitutes admissible evidence and/or information of the type that can at a minimum be used during discovery to lead to such evidence.

The recognition that something was amiss on 9/11did not register for most of us because we were in "shock and awe".  We know, too, that some of the defendants herein are specialists in psychological warfare (psy ops) where the "shock and awe" doctrine is studied, refined and applied.  That is a topic that will likely come up in the discovery phase.

Professionals who are contracted by the government to do quality work cannot merely accept as true the outlandish proposition that the standard version of events of 9/11 requires one to believe.  This is a court of law, not a Hollywood set.  And, it is in that context that the facts set forth by plaintiff are to be construed.

A court resolving a facial challenge must accept the factual allegations of the complaint as true, Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992), but should refrain from drawing inferences favorable to the party asserting jurisdiction, United

---

[26] The first known article calling 9/11 fraudulent as presented was dated 9/14/01.

States ex. rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester County, New York, 495 F. Supp. 2d 375, 378 (S.D.N.Y. 2007).[27]  This latter cited case was also cited by defendants for a similar proposition; however, as Hon. Judge Denise Cote denied the defendants motion to dismiss in that case, it is here asserted that the holding in the case is more properly in favor of the plaintiff herein and should be deemed to be of important value as precedent in opposition to the defendants' motion to dismiss.

Misapplication of case precedent may also arise in conjunction with the reliance by defendants upon the case entitled U.S. ex rel. Alcohol Found. Inc. v Kalmanovitz Charitable Found. Inc., 186 F.Supp2d 458 (SDNY 2002).  First of all, that case, and the precedent referred to in it predate the U.S. Supreme Court's decision in Rockwell, cited above.

Secondly, the Alcohol Found. case references a "mosaic" of scientific information as and for the information on which the "original source" requirement was to be premised.  That is a far cry from the claims of Dr. Reynolds, the plaintiff herein.  Dr. Reynolds submitted, not a mosaic, but a specific and governmentally sanctioned Request for Correction alleging fraud.  That is the document that is in the record that alleges fraud and it is his and it belongs to no other.

In fact, let this brief here and now stand for the following alternative proposition and request for relief:

**Dr. Morgan Reynolds, the plaintiff herein, may, in fact, be able to assert that the information upon which his qui tam case is based is _not_ publicly disclosed information, other than by virtue of his having submitted it to the government.  Thus, he is not in any way relying on publicly disclosed information for purposes of making out his case.  He, and no one else, is**

---

[27] The defendants' cited this case without reference to its official citation and, instead referenced it as:  U.S. ex rel. Anti-Discrimination Center v. Westchester County 2007 U.S. Lexis 50589 *7 (SDNY 2007).  It is unclear whether it became officially reported after the defendants prepared their brief, as, indeed, it might have.

*the source of the NO PLANES claim upon which this case is based where NO PLANES means no wide-body 767 jetliners hit the WTC on 9/11. Dr. Reynolds made the claim in his RFC submittals to NIST and is, therefore, at a minimum, the original source of that claim and it is __not__ conceded that this is publicly disclosed information. True, it can be found on the government's website[28] and is readily available to the public. However, plaintiff is the one who provided __that__ information; after which the government publicly disclosed it.*

This case has next to nothing in common with the Alcohol Found. case relied on by defendants. Dr. Reynolds clearly and unequivocally satisfies the original source requirement as that requirement has been clarified by the U.S. Supreme Court who has advised all of us that the word "information" that has been confused from one case to another is to be considered as follows:

> "First, does the phrase "information on which the allegations are based" refer to the information on which the relator's allegations are based or the information on which the publicly disclosed allegations that triggered the public-disclosure bar are based? The parties agree it is the former. See Brief for Petitioners 26, n. 13; Brief for United States 24, and n. 8; Brief for Respondent Stone 15, 21. But in view of our conclusion that *§ 3730(e)(4)* is jurisdictional, we must satisfy ourselves that the parties' position is correct. **Though the question is hardly free from doubt, we agree that the "information" to which subparagraph (B) speaks is the information upon which the relators' allegations are based."** (bold emphasis added)  Rockwell Int'l Corp. v United States, 127 S. Ct. 1397, 1407; 167 L. Ed. 2d 190, (2007).

While not openly addressing that issue, the defendants do state "[a] court must "accept as true all material factual allegations in the complaint," but refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction" citing an unreported case entitled U.S. ex rel. Anti-Discrimination Center v. Westchester County 2007 U.S. Lexis 50589 *7 (SDNY 2007).

*B. Rule 12(b)(6)*

---

[28] See footnote number 1.

As the Supreme Court has recognized, a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." See  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). There has been no discovery in this matter. Defendants have not filed a summary judgment motion, nor should its motion be treated as such. At the pleading stage, the court's inquiry is limited to whether relator has pled facts sufficient to state a cause of action under the FCA.

The question before the Court is whether the allegations of the complaint are sufficient to establish a cause of action under the False Claims Act. Relator submits that they are, and that the motions to dismiss should be denied.

## C. "First to file"

The ARA grouping of defendants place considerable emphasis[29] upon a highly suspect interpretation of the FCA's "first-to-file" rule.  For context, that rules states: "When a person brings [a qui tam action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

It is asserted, for purposes of brevity, that this court has not yet ruled on whether it has jurisdiction over the case cited by defendant as giving rise to the "first-to-file" rule; namely Wood v ARA, such that as a matter of law, the "first-to-file" rule does not even apply as yet. True, the ARA grouping can be said to have admitted that this court has jurisdiction over that case, but the admission does not stop there.  They have also admitted the court has jurisdiction over this case.  Still, the first to file bar is far more limited than defendants acknowledge.

---

[29] One of them, ARA, goes so far as to file a Rule 11 Motion, confirming, in so doing, that they must be deemed to have admitted that this court has jurisdiction over the Wood v ARA case.  Indeed the Rule 11 Motion is yet another admission that this court has jurisdiction over that case.

Factually, it is true that a qui tam action was filed before this one by relator Dr. Judy

Wood.  But the Wood case does not bar Reynolds' claims because the words of § 3730(b)(5)--

"related action based on the facts underlying the pending action" are normally interpreted to bar

***"actions alleging the same material elements of fraud"*** as an earlier suit, even if the allegations

"incorporate somewhat different details." United States ex rel. Lujan v. Hughes Aircraft Co., 243

F.3d 1181, 1189 (9th Cir. 2001); see also United States ex rel. LaCorte v. Smith-Kline Beecham

Clinical Labs., Inc., 149 F.3d 227, 232-34 (3d Cir. 1998).

The "NO PLANES" claim of fraud involves completely different material elements of

fraud than does the 'DIRECTED ENERGY WEAPONS" claim.

No binding 2nd circuit case could be found that differs in any way from the above quoted

articulation on when and how the "first-to-file" rule is applied.  Recall, too, that the Rockwell

case specifically acknowledges that 'theories' of fraud can be either correct or incorrect, as

determined by judicial process in qui tam cases.  For that reason, it is not only rational, it is

indeed mandatory for the two cases to have been filed separately.  Otherwise, both claims might

have been barred if one theory was incorrect, even while the other might have been correct.  It is

well nigh certain that that, in any event, is what the defendants would argue for.

Moreover, and speaking of "sanctions," it is to be noted that the defendants cite U.S. ex

rel. Pentagen Techs. Int'l Ltd. V. CACI Int'l Inc., 172 F.3d 39 (2nd Cir. 1999) which is not only

an improper citation; the case, by whatever its correct citation might be, (try 63 Fed. Appx. 548;

2003 U.S. App. LEXIS 7901) does not mention § 3730(b)(5) or the "first-to-file" rule.  Clearly,

defendants herein are grabbing at straws and, on its face at least, are seeking to mislead this court

by referencing nonexistent authority for their incorrect assertion.  That is improper.

Congress added § 3730(b)(5) to the False Claims Act in 1986.  The purpose of the 1986

amendments to the Act were articulated in United States ex rel. Springfield Terminal Ry. v.

Quinn, 304 U.S. App. D.C. 347, 14 F.3d 645 (D.C. Cir. 1994), a decision interpreting another

provision-- 31 U.S.C. § 3730(e)(4)(A), which bars qui tam suits "based upon the public

disclosure of allegations or transactions" in specified types of public proceedings, id., including

legal proceedings. See Springfield, 14 F.3d at 652. The history of the False Claims Act "qui tam

provisions demonstrates repeated congressional efforts to walk a fine line between encouraging

whistle-blowing and discouraging opportunistic behavior. The 1986 amendments ... must be

analyzed in the context of these twin goals of rejecting suits which the government is capable of

pursuing itself, while promoting those which the government is not equipped to bring on its

own." 14 F.3d at 651. Cf.  United States ex rel. Findley v. FPC-Boron Employees' Club, 323

U.S. App. D.C. 61, 105 F.3d 675, 686-88 (D.C. Cir. 1997). The Springfield and Findley

decisions interpreted the words "based upon ... allegations or transactions" in § 3730(e)(4)(A) to

mean "'material elements of the fraudulent transaction.'"  And so it is with respect to the "first-to-

file" rule; all as more fulsomely developed by Rockwell.

 There is no merit whatsoever to the defendants' heavy emphasis on the "first-to-file" rule.

*D. Exhaust*

 Defendants next assert that plaintiff must exhaust his IQA remedy within NIST and/or

that the administrative process there is an exclusive remedy.  That claim is equally without merit,

just as defendants' "original source" challenge is without merit and for the same reason; namely:

The law governing the issue of administrative remedies in connection with qui tam cases is

contrary to the defendants' asserted position.

 The FCA specifically permits plaintiff to do what plaintiff has done and here is why that

is so:

 The FCA statute first permits any "person" to bring an action and then specifically

excludes two groups of people and two categories of information. The groups of people include

members of the armed forces, Congress, the judiciary, and senior executive branch officials.[30] Defendants do not claim entitlement to coverage by that category of exclusion.

The two categories of information are those (1) based on allegations that are subject of a civil suit or administrative civil money penalty proceeding[31] and those (2) based on the public disclosure of allegations or transactions unless the person bringing the action is an original source of the information.   We have already disposed of the original source issue.

What remains is the exclusion arising where "a civil suit or administrative civil money penalty proceeding" is involved.  The relevant statute states:

> "(3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."  *31 U.S.C.* § 3730 (e)(3).

The IQA is <u>not</u> within the category of excluded matters quoted above.  It is not a civil suit, obviously, and no money penalty is involved in the IQA at all and defendants certainly do not claim otherwise.  In fact, the essence of what defendants have to say in raising the issue of the IQA does not accord with any part of the FCA.  The FCA does not mandate or even mention as a possibility the issue of exhaustion of administrative remedy.  Defendants are, to put it colloquially, barking up the wrong tree in raising the issues of exhaustion of administrative remedy and of whether or not there is a right of judicial review of IQA decisions.  The plaintiff herein is not contesting NIST's response to his RFC.  Rather, the plaintiff herein simply cites the RFC as and for the method by which the plaintiff provided the Government with his information concerning his claims of fraud for purposes of satisfying the "original source" requirement already discussed hereinabove.

---

[30] 31 U.S.C. § 3730(e)(2).

[31] *31 U.S.C.* § 3730 (e)(3).

Defendants place reliance on a case entitled <u>Salt Inst. v. Thompson</u>, 440 F3d 156 (4th Cir. 2006). That case is entirely inapplicable to this case arising under the FCA. *31 U.S.C. § 3729 et seq.* That case deals solely and exclusively with the issue of judicial review of governmental responses to requests for correction submitted under the IQA. Trust me, if this were a case involving judicial review of a response to a request for correction, then that is what the claim would have asserted. That is not the case here and defendants, then, are simply arguing about an issue of their own creation that has nothing whatever to do with this case.

*E. Rule 9(b) "Particularity"*

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Claims brought under the FCA must satisfy the heightened pleading requirements of Rule 9(b). <u>Gold v. Morrison-Knudsen Co.</u>, 68 F.3d 1475, 1477 (2d Cir. 1995). Rule 9(b)'s requirement for particularity serves several purposes: "(1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect the defendants from unfounded charges of fraud which may injure their reputations." <u>United States ex rel. Barmak v. Sutter Corp.</u>, No. 95 Civ. 7637, 2002 WL 987109 at *5 (S.D.N.Y. May 14, 2002).

> To meet the requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. This strong inference can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Ordinarily, allegations of fraud cannot be founded solely upon 'information and belief,' except as to those matters particularly within the opposing party's knowledge; in the latter instance, allegations must be

accompanied by statements of facts upon which such belief is reasonably founded.

United States ex rel. Phipps v. Comprehensive Community Development Corp., 152 F. Supp. 2d 443, 454-55 (S.D.N.Y. 2001) (internal citations and quotations omitted). Said another way, the complaint must allege the who, what, where, when, and how of the fraudulent practice in order to satisfy the pleading requirements of Rule 9(b). United States ex rel. Yannacopolous v. General Dynamics, 315 F. Supp. 2d 939, 944-45 (N.D. Ill. 2004) (citing Dileo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).

Courts have recognized, however, that "the sufficiency of pleadings under Rule 9(b) may depend 'upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 333 (D. Conn. 2004)(quoting Payne v. United States, 247 F.2d 481, 486 (8th Cir. 1957)); Bernstein v. Crazy Eddie, 702 F. Supp. 962, 976 (E.D.N.Y. 1988)(the level of specificity required under Rule 9(b) "var[ies] with the circumstances of each case"); Gelles v. TDA Indus., Inc., No. 90 Civ. 5133, 1991 WL 39673 *6 (S.D.N.Y. 1991)("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map. Nor should the word 'particularity' be used as a talisman to dismiss any but a finely detailed fraud allegations brought in a federal court."). For instance, courts have relaxed the pleading standards under Rule 9(b) where allegations of fraudulent conduct are numerous or take place over an extended period of time and when the specific factual information is peculiarly within the defendant's knowledge or control. See In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 333-34 (D. Conn. 2004)(and cases cited therein); United States ex rel. Olloh-Okeke v. Home-Care Services, Inc., No. Civ.A. 3:97-CV-2738-H, 1999 WL 222356 at *2 (N.D. Tex. Apr. 9, 1999).

In essence, when a plaintiff identifies the victim of the fraud, what type of fraud it was, the general time period in which the fraudulent conduct occurred, where the fraudulent statements were made, and how the statements constituted fraud, Rule 9(b) does not require an FCA claim to "describe in detail a single specific transaction . . . by customer, amount, and precise method".  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  "So long as a defendant has 'fair notice' of the charges against him, the purposes of Rule 9(b) have been satisfied." United States v. Warnings, No. Civ. A. 93-45411994, WL 396432 at *2 (E.D. Pa. July 26, 1994).

Construing Rule 9(b), the Second Circuit has said that "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and [*28] when the statements were made, and (4) explain why the statements were fraudulent." Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir. 1995)(internal citation omitted).

The complaint, especially as supplemented by the attached affirmation, meets each of the Acito requirements. First, the complaint provides adequate detail about the certifications and claims relator alleges are fraudulent.  Courts have not required relators in FCA cases to name each and every instance of falsity or fraud. See, e.g., United States ex rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 231 (1st Cir. 2004) (requiring relator only to "describe with particularity some of the documents containing false claims for payment that the defendants allegedly submitted to the United States.")

The scope of relator's allegations is broad, covering each and every time during a two plus-year period that defendants made false claims for payment based on fraudulently performed work..  While the precise number of such claims is not yet known, for each of the years of the false claim period (commencing June, 2003),  defendants' false claims will be

discoverable and discovered. On information and belief, therefore, defendants made false certifications or claims in multiple instances.

Second, the complaint adequately alleges the "identity of the speaker" as being these defendants and what they were contractually mandated to do.

Third, the complaint adequately pleads "where and when the statements were made". They were made in NCSTAR 1.

Finally, as outlined above, the complaint goes to great lengths to explain why the statements were fraudulent.

Having satisfied each element of Rule 9(b), as interpreted by the Second Circuit in Acito, relator prays that the Court deny the motion to dismiss on this ground as well. In the alternative, if the Court grants the motion with respect to this point, relator prays for leave, and a reasonable time within which, to amend his complaint.

Part III.

## ADEQUATELY PLEADING A VIOLATION OF THE FALSE CLAIMS ACT

As this case comes before the Court on a motion to dismiss, the scope of the Court's review is narrow. Relator's allegation of a "false claim," must be considered under the familiar standard applicable to Rule 12(b)(6) motions: a trial court "must accept as true all the factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor." In re Tamoxifen CitrateAntitrust Litig., 466 F.3d 187, 200 (2d Cir. 2006), and may "dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" set forth therein. Twombly v. Bell Atl. Corp., 425 F.3d 99, 106 (2d Cir.2005). Applying that standard, the motion to dismiss must be denied.

A. Governing Circuit Law on "False or Fraudulent Claims" Under the False Claims Act

The FCA provides that "[a] person may bring a civil action for violation of

36

31 U.S.C. Section 3729 for the person and for the United States Government." 31 U.S.C. at 3730(b). Liability under can be established by showing that a person has "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval," or that such person has "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. at 3729(a). The FCA defines "knowing" as either "(1) possessing actual knowledge; (2) acting in deliberate ignorance of falsity; or (3) acting in reckless disregard of falsity." 31 U.S.C. at 3729(b).

In order to state a claim under the FCA, a Relator must allege that defendant "(1) made a m, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." Id. at 695.

The motions to dismiss, taken separately and in the aggregate, are noteworthy in their complete lack of specificity with respect to any of the five (5) elements mentioned above. Put candidly, the defendants herein seek dismissal "JUST BECAUSE…" There is not one single affidavit among the defendants' filings that even denies the allegations of fraud; let alone confirming any deficiency in the complaint as regard to any of the listed elements. Moreover, the complaint can clearly be read to allege that a "false" claim was made with "knowing" falsity.

B. The Falsity of Defendant's Claims

The essential "falsity" of any false certification or claim lies in the discrepancy between what a grantee represents to the United States Government it is doing, and what it is actually doing.  Defendants made a series of requests for payment, knowing them to be based on assertions that were false or, at a minimum, that they were holding themselves willfully indifferent to the truth of the matter involving the work they were doing that would then lead to

the false and fraudulent publication of NCSTAR 1, that bears their names that are used to buttress its false conclusions.  That is fraud.

This FCA case involves a two-plus years pattern and practice of defendants making a large number of false claims for payment for work they knew to be false and contrived in order to conform to a pre-determined causal myth concerning what happened at the WTC on 9/11 This type of fraud may be unusual, but its results and its impact on society as a whole are devastating.  While the precise number of such claims or payments is not yet known, for each of the two-plus years of the false claim period (commencing June, 2003),  defendants' false claims appeared in published statements that are referenced in the annexed affirmation of Jerry V. Leaphart.

These were not innocent mistakes or negligence.  And, in any event, defendants do not even bother to affirmatively assert, let alone demonstrate any compliance or any way in which their work was honest and correct.  Defendants do not even bother to deny the assertions of fraud that are made by plaintiff.

At the pleadings stage, a relator satisfies the "knowing" prong of the FCA by alleging that a defendant "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and  no proof of specific intent to defraud is required." 31 U.S.C. @ 3729(b). See also United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1152 (2d Cir. 1993), cited by some defendants, but not for the proposition here referenced.  In point of fact, the Second Circuit has held that under the FCA, "the 'requisite intent is the knowing presentation of what is known to be false.'" Hagood v. Sonoma Co. Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996).

Federal courts have articulated a two-part inquiry to determine whether a qui

tam action can be barred under the FCA on jurisdictional grounds. The first question is whether the lawsuit is "based upon the public disclosure of allegations or transactions (1) in a criminal, civil, or administrative hearing, (2) in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or (3) from the news media..." 31 U.S.C. at 3730(e)(4). See also United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 323 (2d Cir. 1992)(holding that @ 3730(e)(4)(A) "furnishes an exclusive list of the ways in which public disclosure must occur for the jurisdictional bar to apply" and that a qui tam action is not otherwise barred)[32].

Thereafter, "[i]f-and only if-the answer to the first question is affirmative ... will the court then proceed to the 'original source' inquiry, under which it asks whether the qui tam plaintiff 'has direct and independent knowledge of the information on which the allegations are based.' 31 U.S.C. at 3730 (e)(4)(B)." U.S. ex rel. Springfield Terminal Railway Co. v. Quinn, 14 F.3d 645, 651 (D.C. Cir. 1994)(internal citations omitted).

In the case at bar, the complaint and the attached affidavit and affirmation adequately demonstrate that the essential allegations of the lawsuit-that defendants knowingly submitted false claims with respect to work done for NIST leading to the false report entitled NCSTAR1 and were not publicly known prior to the March 8, 2007 disclosures by Dr. Morgan Reynolds. Defendant ARA makes only generalized assertions to the contrary claiming, essentially, that any questioning of 9/11 is the same as the specific claims specifically made by Dr. Reynolds. That is not what this case entails.  This is a case involving specific disclosures that are unprecedented in their detail, scope and authenticity.  It is certain that relator did not learn of

---

[32] U.S. v. Catholic Healthcare W., 445 F.3d 1147, 1152 (9th Cir. 2006) (finding that "for the suit to be barred, Defendants must show that its essential elements, both the alleged truth and the allegedly fraudulent statements, were publicly disclosed via an enumerated source") (emphasis added).  Nor does Relator need to prove that information conveyed by County officials was "confidential." Def. Mem. 9. Such a requirement is found nowhere in the statute.

these specific and essential allegations in any manner set out in the jurisdictional bar because they are unique to him and were publicly disclosed.  Moreover, we have already seen that ARA has admitted this factor.

Defendants do not offer proof of where, how or in what manner relator bases his lawsuit, much less the sources.  While the Second Circuit has not opined on the subject, several federal courts, including a trial court in this district, have held that information derived from a request under the federal Freedom of Information Act ("FOIA") is not a "public disclosure" within the meaning of 31 U.S.C. at 3730(e)(4)(A). See U.S. ex rel. Pentagen Technologies Intern. Ltd. v. CACI Intern., Inc., 1996 WL 11299, *9-10 (S.D.N.Y. 1996), in which Judge Carter reasoned:

> The phrase does not refer to documents not yet in the public domain but which can be pulled into the public domain- accessible-as the result of access mechanisms such as the FOIA law. Therefore, "if [the documents] are not yet in the public eye, no rational purpose is served-and no 'parasitism' deterred-by preventing a qui tam plaintiff from bringing suit based on their contents." Springfield, 14 F.3d at 653. Based upon this reasoning, Pentagon's reliance, if any, on allegations or transactions-or information without which it would not have thought of the allegations-contained within documents obtained under the FOIA does not compromise the court's jurisdiction because the documents acquired under the FOIA are not publicly disclosed within the meaning of at 3730(e)(4)(A).

If the Court should find that the allegations underlying this action have been "publicly disclosed" within the precise contours of 31 U.S.C. at 3730 (e)(4), relator nevertheless qualifies as an "original source" of those allegations. In order to qualify as an original source, a relator must "(1) have direct and independent knowledge of the information on which the allegations are based, and (2) have voluntarily provided such information to the government prior to filing suit." 31 U.S.C. at 3730(e)(4)(B).[33]   As in Kennard v. Comstock Resources,

---

[33] The U.S. Supreme Court's recent decision in Rockwell International Corp. v. United States, 127 S.Ct. 1397 (2007), effectively overrules the "additional requirement" articulated in U.S. ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 17 (2d Cir. 1990). Justice Scalia's opinion for the Court reasons that it would be illogical to require a relator to prove that it was the source of information underlying publicly disclosed allegations, or those already known by the U.S. Government. Rather, a relator must only demonstrate that it has direct and independent

<u>Inc.</u>, 363 F.3d 1039, 1043 (10th Cir. 2004); relator herein sorted through relatively obscure public documents and, together with his own records, used these documents to discover and support his claim of the alleged fraud. This case would not exist but for Relator sniffing it out. Through discovery and deduction, relator ferreted out the alleged fraud in this case and must, therefore, qualify as an original source.

Here, the relator has "direct and independent knowledge of the information on which the allegations are based." at 3730(e)(4)(B) where he has clearly demonstrated "a new and undisclosed relationship between disclosed facts, that puts the government on the 'trail' of fraud." Finally, there is no question that the relator here "voluntarily provided the information to the government before filing," (3730(e)(4)(B)) by way of his March 8 and May 1, 2007, RFCs.

CONCLUSION

For the foregoing reasons, relator prays that this Court deny the motion to Dismiss of the various defendants who have filed them. It is understood that defendants appear to articulate a claim that they "saw no evil, did no evil, knew no evil" and do not know why on earth they are here in Court. However, this memorandum demonstrates that willful blindness is an element of fraud, not an excuse for it.

Respectfully submitted,

By_____
Jerry V. Leaphart jl4468
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
(203) 825-6256 - fax

knowledge of the information on which its own allegations are based, and have shared it with the U.S. Government.

jsleaphart@cs.com

Dated:        Danbury, CT
              January 28, 2008

## ELECTRONIC CERTIFICATE OF SERVICE


I hereby certify that on January 28, 2008, a copy of the foregoing Plaintiff's

Memorandum of Law in Opposition of Defendants' Motion to Dismiss was filed electronically

and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent

by email to all parties by operation of the Court's electronic filing system or by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the Court's CM/ECF System.



    /s/ Jerry V. Leaphart_____
Jerry V. Leaphart (jl4468)
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
Tel. (203) 825-6265
Fax (203) 825-6256

07cv4612MoLOpposeDis012808