**MORGAN REYNOLDS, Ph.D.**

**Professor Emeritus**

**26 Alta Way**

**Hot Springs Village, AR 71909**

econrn@suddenlink.net

501-922-4592

November 13, 2007

**Via Email: foia@nist.gov.**

National Institute of Standards and Technology
FOIA Office
100 Bureau Drive
Stop 1710
Gaithersburg, MD 20899-1710

Re: Freedom of Information Act Request

Dear FOIA Office:

This is a request under the Freedom of Information Act, 5 U.S.C. Sec. 552.  I am in receipt of your letter of October 25, 2007, regarding my request of October 5, 2007 and assigned FOIA Log #08-03.

On October 5, 2007, I requested copies of and/or access to the videos that NIST collected that depict, show or otherwise appertain to the allegation that two 767 jetliners crashed into World Trade Center buildings One and Two respectively.

You have initially estimated "the cost for the search as $3,030.50…if the actual cost for search and duplication of responsive documents is more than the estimate, you will be required to pay the difference.  Please be advised that these charges are assessed whether or not responsive documents are located and whether or not any of these documents are exempt from disclosure under FOIA."

So, please allow me to restate your offer in my own terms and respond in the following fashion:

1. Upon receipt of check or money order of $3,030.50 from me, NIST promises to perform a "search" for the relevant documents.

2. The NIST search may or may not yield any video evidence that NIST may or may not send to me despite the fact that NIST asserted in its initial denial letter of September 28, 2007, "Further, all photographs and video records obtained by NIST are kept on a secure server with access limited only to authorized NIST personnel," suggesting that the relevant videos can be easily accessed and copied at low cost. "The assembled collection included: 6,977 segments of video footage, totaling in excess of 300 hours," according to p. 83 (133 of 298) of Final Report on the Collapse of the Twin Towers (NIST NCSTAR1); the report further states, "The media videos included both broadcast material and outtakes. Additionally, NIST received videotapes recorded by more than 20 individuals…As with the videos, many of the photographs were unpublished." 300 hours of video footage in nearly 7,000 segments would imply an average video segment of just over 2.5 minutes in duration. However, NIST NCSTAR 1-5 on p. xxxviii (40 of 240) declares, "NIST assembled a collection of nearly 150 segments of video footage (totaling in excess of 300 hours) and over 7,000 photographs." This same statement is repeated on p. 5 (59 of 240). So the true number of video segments appears to total closer to 150 than 7,000. In addition, NIST asserts, "The collection included the work of over 200 photographers and 40 videographers." So the relevant number of videographers appears to be around 40 and the overall number of video segments totals approximately 150.

3. NIST asserts that it has organized the visual material into a database with "searchable properties," including a time line, suggesting that it should be easy for NIST to locate the subset of video segments exclusively concerned with the plane image hits on WTC 1 and WTC 2. NIST puts the time of the WTC 1 hit precisely at 8:46:30 a.m. and the WTC 2 hit precisely at 9:02:59, which may aid in its search for the subset of requested videos. In addition, NIST states that its database includes the searchable property of whether a video included key events. The airplane "hits" surely qualify as "key events." These two features—searchable by time and key events—should make very easy to recover all video segments that include images of planes flying into towers.

4. NIST NCSTAR 1-5 says on p. 6 (60 of 240), "The data regarding the events immediately following the impact of American Airlines Flight 11 on the north face of WTC 1 at 8:46:30 a.m. came exclusively from two videos and one set of a few still photographs. The two videos were shot from the north and northwest of WTC 1, respectively…These formed the basis for the following time line, estimation of the speed of the approaching aircraft, description of the immediate damage to the tower (strictly as seen from the outside), and characterization of the fire behavior in the immediate aftermath." I respectfully request a cost itemization for searching for and copying these two video segments.

5. NIST NCSTAR 1-5 says on p. 21 (75 of 240): "More than 25 video clips of the aircraft striking WTC 2 from all four sides were included in the NIST visual database. All of these clips were placed on a common time line accurate to one video frame or 1/30 s, leading to the detailed chronology in Table 2-2." Each video of the WTC 2 hit is only seconds each in duration, aside from outtakes. I respectfully request a cost itemization for locating and copying each of these "more than 25 video clips."

6. NIST places no upper bound on my personal liability/expense despite the fact that I have no way to verify the true costs it incurred nor can I assess the care and efficiency with which NIST personnel conducted its "search" on its own secure server. Given the organized NIST database, the search should easily fall within the first two free hours, leaving only duplication costs. It is also relevant to point out that NIST already consumes an annual budget of approximately $843 million, virtually entirely paid by American taxpayers like me.

7. NIST states no grounds for how or why any "of documents are exempt from disclosure under FOIA." Grounds for exemption from disclosure for the relevant videos are already known to NIST and I hereby request the that NIST state specific grounds upon which NIST proposes to exempt specific video segments from disclosure. As I understand it, the following are grounds for exemption from disclosure: **What Categories of Records May be Withheld from Requesters?**

    The FOIA lists nine exemptions: (1) information that is security-classified under the terms of a presidential executive order as "confidential," "secret," or "top secret"; (2) information related solely to internal personnel practices or rules of an agency; (3) information specifically exempt from disclosure under other federal legislation, for example, the Atomic Energy Act; (4) information considered to be confidential business information such as trade secrets or confidential financial data; (5) information dealing with interagency and intra-agency communications that form a part of the decision-making process; (6) information that permits a "clearly unwarranted invasion of personal privacy"; (7) information about investigatory matters collected to further law enforcement that would interfere with law enforcement, deprive a person of a fair trial, cause an invasion of privacy, expose the identity of a confidential source, disclose investigative techniques, or endanger lives of law enforcement personnel; (8) information concerning financial institutions held by agencies that regulate or supervise such institutions; (9) information about wells of a geological or geophysical nature such as oil.

    http://www.oah.org/pubs/foia/index.html
    None of the NIST videos appears to qualify for exemption from disclosure under the standards above. If I am in error, please tell me where.

8. NIST NCSTAR 1-2 on p. 152 (266 of 462) says, "The available videos were reviewed to select the best video footage of the aircraft's approach and impact with each tower.  The videos were digitized and stored in AVI files.  The WTC 1 aircraft impact was captured in two videos, and both were used in the analysis.  Several videos captured the aircraft impact into WTC 2 tower, and seven of them were selected for the analysis."  NIST fundamentally relied upon only two videos plus a few still photographs regarding the hit on WTC 1 and upon seven videos of the hit on WTC 2.  I hereby respectfully request an itemization for NIST to locate and duplicate these nine videos, eight of them obviously very short, with the lone exception being the Naudet brothers film, although even in this case the relevant section regarding the WTC 1 hit in that film is short.

In addition to the requests for cost itemization of the video segments as requested above in #4, 5, and 8 and NIST exactitude regarding "documents exempt from disclosure under FOIA," I hereby respectfully request a 30-day extension of the deadline to submit "a check or money order from you within calendar days of the date of this letter [October 25, 21007]."

In addition to the 30-day extension of time, request is hereby made for exemption from the payment of fees.  It is clearly understood that "documents shall be furnished without charge, or at reduced charges if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and is not primarily in the commercial interest of the requester." 15 CFR § 4.11 (k)

As I have acted in the public interest in filing a detailed RFC with NIST, resulting in a response and an appeal, in which the response, itself, resulted in NIST making (a slight) change in NCSTAR 1, it is not only clear my request is in the public interest, it is also clear that my request for information is in furtherance of the ongoing corrections process and not at all for commercial purposes.

I further warrant and represent that the requested information will not be used for any commercial purpose, but will only be used for educational, nonprofit, scientific and/or public interest purposes.

Thank you for your consideration of these requests.


Sincerely,



Dr. Morgan O. Reynolds

c.c.: Jerry V. Leaphart