# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DR. MORGAN REYNOLDS on behalf of the UNITED STATES OF AMERICA, | § § § § | |
| Plaintiff/Relator, | § § | |
| vs. | § § | |
| SCIENCE APPLICATIONS INTERNATIONAL CORP.; APPLIED RESEARCH ASSOCIATES INC.; NuSTATS; COMPUTER AIDED ENGINEERING ASSOCIATES, INC.; DATASOURCE, INC.; GEOSTAATS, INC.; GILSANZ MURRAY STEFICEK LLP; HUGHES ASSOCIATES, INC.; AJMAL ABBASI; EDUARDO KAUSEL; DAVID PARKS; DAVIS SHARP; DANIELE VENEZANO; JOSEF VAN DYCK; KASPAR WILLIAM; ROLF JENSEN & ASSOCIATES, INC.; ROSENWASSER/ GROSSMAN CONSULTING ENGINEERS, P.C.; SIMPSON GUMPERTZ & HEGER, INC.; S.K. GHOSH ASSOCIATES, INC.; SKIDMORE, OWINGS & MERRILL, LLP; TENG & ASSOCIATES, INC.; UNDERWRITERS LABORATORIES, INC.; WISS, JANNEY, ELSTNER ASSOCIATES, INC.; AMERICAN AIRLINES; SILVERSTEIN PROPERTIES; and UNITED AIRLINES, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 07 CV4612 (GBD) <br><br> **SIMPSON, GUMPERTZ, & HEGER, INC. AND COMPUTER AIDED ENGINEERING ASSOCIATES, INC.'S REPLY TO RELATOR'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS** |
| Defendants. | § | |

## I.    **INTRODUCTION**

On May 30, 007, the Relator in this case, Dr. Morgan Reynolds ("Reynolds") commenced this *quit tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33 by filing a complaint against twenty-seven defendants, including Simpson Gumpertz & Heger, Inc. ("SGH") and Computer Aided Engineering Associates ("CAE"). On October 5, 2007 defendants SGH and CAE filed a Motion to Dismiss the Reynolds Suit in its entirety, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6) and 12(h)(3), and for an award of attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)(4). The Court (Daniels, N.Y. D.J.) granted the Relator's request for a more than three-month extension of time to file a Response to defendants' Motion to Dismiss, and subsequently, granted Relator's request to file an over-length brief.

On January 28, 2008, Relator filed a 42-page Memorandum of Law in Opposition to Defendants' Motions to Dismiss, together with nearly 400 pages of Affidavits, Affirmations and Exhibits. These Opposition papers continue to make the far-fetched and delusional assertion that jetliners did not crash into the WTC, and that NIST has conspired with defendants to perpetuate this "official myth" in order to cover up the real "truth" that directed energy weapons ("DEW") and other secret weapons were responsible for the destruction of the WTC. Reynolds' Opposition papers attempt without success to distinguish the allegations in his *qui tam* Complaint from the allegations of another *qui tam* relator, Dr. Judy Wood, in order to avoid the "original source" bar and/or the "first to file bar" under the FCA. See 31 U.S.C. 3729 *et seq*. For example, he asserts that the "claim that no wide-body jetliners hit the WTC . . . is plaintiff, Reynolds' claim and his alone." Opposition, p. 16.

2

Irrespective of whether the Court decides to apply the "first to file" rule or the "original source" rule,[1] it is beyond dispute that Reynolds and another *qui tam* relator, Dr. Judy Wood, both filed Requests For Correction ("RFCs") with NIST in March 2007 challenging the information set forth in the NCSTAR report. In the spring of 2007, before completing the RFC administrative process established by NIST, they both filed separate *qui tam* FCA actions under seal in the United States District Court for the Southern District of New York. Most of the paragraphs set forth in these two *qui tam* Complaints are identically-worded. Both actions allege that defendants should be charged with fraud for participating in a conspiracy with NIST to cover up the true cause of the collapse of the WTC.[2] Both relators allege that defendants conspired with NIST to "produce a report that sought to go to any length necessary to avoid, disguise, omit and otherwise divert attention away from the actual, real and intended destruction of the WTC complex by use of one device, namely directed energy weaponry." See Reynolds' *qui tam* Complaint, ¶ 51; Wood's First Amended *qui tam* Complaint, ¶ 53. Both relators contend that the analyses conducted by NIST violate the laws of physics and that NIST wrongfully hired

---

[1] Some courts decline to apply the first-to-file bar where the original *qui tam* action does not fulfill the jurisdictional prerequisites established by § 3730(3)(4), the "original source" rule. For example, in Campbell v. Redding Med. Ctr., 421 F.3d 817 (9th Cir. 2005), the court found the first-to-file bar should not apply where the original *qui tam* action does not fulfill the purpose of the *qui tam* provisions contained in the FCA because "a pending action filed by a non-original source does not alert the government to the essential facts of a fraudulent scheme." Id. Similarly, some courts decline to apply the first-to-file bar where the original *qui tam* action does not satisfy Rule 9(a). See also Walburn v. Lockheed Martin Corp., 431 F.3d 966, 973 (6th Cir. 2006). In Walburn, the original *qui tam* complaint was so vague that it failed to give the government notice of the fraud scheme and was ultimately dismissed for failure to adequately plead fraud pursuant to Rule 9(b)). Id. The Court found that "Walburn's second-filed action cannot be 'based on the facts underlying' the [first] action when the facts necessary to put the government on notice of the fraud alleged are conspicuously absent from the [first] complaint." Id. The Court held that "because the [first] action is legally infirm under rule 9(b), it fails to preempt Walburn's later-filed action despite the fact that the overly-broad allegations of the [first] complaint 'encompass' the specific allegations of fraud made by Walburn." Id. The Second Circuit has not yet addressed this question.

[2] Even though the Wood *qui tam* Complaint was filed first, it was not unsealed by the district court until September 12, 2007, several months after the Reynolds' complaint was unsealed and served. Additionally, Wood waited several more months before serving SGH and CAE with the Complaint. By contrast, Reynolds *qui tam* Complaint was served on SGH and CAE in August 2007.

3

contractors who had conflicts of interest in performing work for NIST because they are researchers and/or manufacturers of directed energy weapons.

On September 28, 2007, NIST issued a decision denying Reynolds' request for correction to the NSTAR report. See Ex. A.[3]   NIST explained to Reynolds that "the analytical modeling methodologies used by NIST were reviewed by individual subject matter experts who also serve on the National Construction Safety Team Advisory Committee and by experts retained by NIST as consultants." Id. NIST clarified in its decision that "though NIST worked with contractors to perform technical work in support of the investigation, all of the findings and conclusions reported in NCSTAR 1 were solely NIST's." Id.   Similarly, NIST denied Wood's RFC. Reynolds appealed NIST's denial of his RFC and that appeal is still pending.  Wood also filed an appeal challenging NIST's denial of her RFC.   On January 10, 2008, NIST issued a decision denying her appeal. See Ex. B.  The decision determined that that "[t]he reported findings and conclusions in the NCSTAR reports are NIST's alone," and "the NIST WTC Investigation Reports need no correction." Id.

## II.    ARGUMENT

### A.    Reynolds' *Qui Tam* Complaint Is Precluded By The First To File Bar

Reynolds' *qui tam* Complaint is precluded by Section 3730(b)(5) of the FCA, the first to file bar, which provides: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." See also Unites States ex rel. Pentagon Techs. Int'l, Ltd. v. CACI Int'l Inc., 1999 U.S. App. Lexis 1728, * 3 (2d Cir. 1999).  Section 3730(b)(5) "essentially creates a 'race to the courthouse' among eligible relators." United States ex rel. Stinson v. The Prudential Ins.

---

[3]   A copy of NIST's September 28, 2007 decision is also attached to the Reynolds' Affidavit submitted in connection with his Opposition Memorandum.

Co., 944 F.2d 1149, 1176 n. 5 (3d Cir. 1991). Courts hold that a later *qui tam* case need not rest on precisely the same facts as a prior case to run afoul of the first-to-file bar, but is barred if it contains variations of the fraud scheme described in the first action, even if the second action alleges somewhat different details about the fraud. United States ex rel. Hampton v. Columbia/HCA Healthcare Corp., 318 F.3d 214, 217 (D.C. Cir. 2003).

Despite Reynolds' efforts to distinguish his complaint from the Wood lawsuit, a careful examination of the allegations in the two *qui tam* complaints reveals a significant factual overlap. Both complaints are based on the same administrative report -- the NCSTAR report -- and challenge its  assumptions, findings and conclusions.  Both complaints accuse NIST of not carrying out its statutory mandate and both complaints state that NCSTAR 1 is fraudulent on its face.  Both complaints allege in identical language that "[i]t is also clear and apparent on its face that NIST's explanation of the destruction of WTC 1,2 issued . . . September, 2005, is blatantly false, incomplete, misleading and fraudulent."  See Wood First Amended Complaint, ¶ 52; Reynolds Complaint, ¶ 50.  Finally (and most importantly)  both complaints make identically *over-broad and unspecific* allegations of false claims.  Wood and Reynolds both allege that defendants knowingly submitted cost reports, requisitions, and billing statements from 2002 through September 2005 that contained false claims for reimbursements concerning their work, but *both fail to identify even one specific instance of a specific fraudulent bill sent to and paid by the government*.    See Wood First Amended Complaint, ¶ 56; Reynolds Complaint ¶ 57. Instead, both Wood and Reynolds make the over-broad and delusional allegation that defendants "knew they included costs that the actual cause of the destruction of the WTC complex was the result of the use of directed energy weapons."  Wood First Amended Complaint, ¶ 60; Reynolds Complaint, ¶ 58.   This Court should hold that  the Wood complaint and the Reynolds complaint

5

both fail to fulfill the jurisdictional prerequisites established by § 3730(e)(4) and both fail to satisfy the heightened pleading requirements of Rule 9(a). Additionally, the first-to-file bar should also apply to preclude Reynolds' action.

**B.** **The District Court Lacks Subject Matter Jurisdiction Under Section 3730(3)(4)**

Section 3730(e)(4) of the False Claims Act defines the jurisdiction of a federal court over *qui tam* actions, and bars jurisdiction if the information giving rise to the *qui tam* claim was subject to public disclosure through an administrative report or investigation, unless the individual bringing suit is the "original source" of the information. See 31 U.S.C. § 3730(e)(4). Reynolds' Complaint challenges the validity of scientific information included in the final report of the NIST investigation of the collapse of the WTC towers, conducted under the National Construction Safety Team Act, commonly known as NCSTAR 1-2. As noted above, Reynolds charges that the NCSTAR report is fraudulent "on its face." Complaint, ¶ 50. The allegations of the Complaint consist of a list of the specific aspects of NCSTAR which Reynolds contends are fraudulent.

NCSTAR 1-2 is an administrative report within the meaning of the FCA, and the jurisdictional bar applies because it was publicly disclosed. Indeed, the allegations of Reynolds' own *qui tam* Complaint state explicitly that NCSTAR 1-2 is publicly disseminated by NIST on its website. See Complaint, Ex. A, March 8, 2007 RFC, p. 3. Reynolds alleges that he obtained a copy of NCSTAR 1-2 on the NIST website, and provides references to the specific NIST web site addresses where he found the purportedly "fraudulent" information. Id. ("the source from which requester obtained the information is the NIST web site at the following pages …"). Thus, the so called wrongdoing was publicly disclosed because NCSTAR 1-2 was, and still is,

6

available to anyone who wishes to consult the NIST website. As explained by the Second Circuit in <u>United States ex rel. Kreindler & Kreindler v. United Technologies Corp.</u>, 985 F.2d 1148, 1158 (2d Cir. 1993), the § 3730(e)(4) jurisdictional bar "was designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." <u>Id.</u>

In the recent case of <u>United States ex rel. Anti-Discrimination Center v. Westchester County</u>, the District Court for the Southern District of New York explained the rationale for the jurisdictional bar in the specific context of an administrative report, as follows: "[i]f the information is derived from a federal government report, then the federal government has the information and can act appropriately, and barring FCA actions in such situations serves the legislative purpose of the 1986 amendments to 'avoid[] parasitic actions by opportunists who attempt to capitalize on public information without seriously contributing to the disclosure of the fraud.'" <u>United States ex rel. Anti-Discrimination Center v. Westchester County</u>, 2007 U.S. Dist. Lexis 50589, * 22 (S.D.N.Y. 2007). Additionally, because Reynolds had "no direct and independent knowledge of any of this publicly disclosed information, he was not an original source of that information, and his suit is barred." <u>Gold v. Morrison-Knudson Co.</u>, 68 F.3d 1475, 1477 (2d Cir. 1995); <u>Rockwell Int'l Corp. v. United States</u>, 127 S. Ct. 1397, 167 L. Ed. 2d 190, 205 (2007). Reynolds' counsel admits that Reynolds was not the first person to question what he calls the "official myth" that jetliners caused the WTC to collapse and was not the first person to suggest a "conspiracy" theory on-line. <u>See</u> Affirmation of Attorney – Jerry V. Leaphart, p. 10, ¶ 20.

C.    **The Complaint Must Be Dismissed Because It Fails To Plead Fraud With Particularity**

Reynolds' Opposition Memorandum acknowledges that "claims brought under the FCA must satisfy the heightened pleading requirements of Rule 9(b)." Opposition, p. 33. Despite this purported understanding of the law, Reynolds' Complaint consists solely of conclusory allegations of fraud and fails to state even one single instance of any defendant submitting a fraudulent bill to the government. He contends in his Opposition that "[t]he scope of relator's allegations is broad, covering each and every time during a two plus-year period that defendants made false claims for payment based on fraudulently performed work." Opposition, p. 35. However, he fails to identify even one false claim. Here, as in United States ex rel. Alcohol Found, Inc. v. Kalmanovitz Charitable Found., Inc., 186 F. Supp. 2d 458 (S.D.N.Y. 2002), the relator's theory seeks to expand the definition of "false" claim or record to address "a generic definition of 'fraud' without direct link to specific claims submitted to the Government for approval or payment." Alcohol Foundation, *supra* at 464. Compare Smith v. New York Presbyterian Hosp., 2007 U.S. Dist. Lexis 53826, * 20-22 (S.D.N.Y. 2007) ("[a]mended complaint … consists solely of conclusory allegations … and … fails to state a single specific instance of a defendant submitting a fraudulent bill to the government"); see also Karvelas v. Melrose-Wakefield Hosp., 360 F.3d at 233 ("as Karvelas himself concedes … his complaint "did not set forth the specifics … of any one single cost report, or bill, or piece of paper that was sent to the Government to obtain funding"). Since none of Reynolds' hundreds of pages of pleadings, affidavits or exhibits provides any information about a specific, fraudulent bill sent to and paid for by the government, his First Cause Of Action (31 U.S.C. § 3729(a)(1)), Second

Cause Of Action (31 U.S.C. § 3729(a)(2)), and Third Cause Of Action (31 U.S.C. § 3729(a)(7))

must be dismissed.

D.     **Reynolds' Complaint Should Be Dismissed Because The Information Quality Act ("IQA") Provides An Exclusive Administrative Process For Challenging The Quality Of Information Disseminated By NIST**

Reynold's lawsuit should also be dismissed because it violates the intent of the

Information Quality Act ("IQA"), also known as the Data Quality Act, which establishes an

administrative process for information correction requests and appeals. The language of the IQA

reflects Congress's intent that "any challenges to the quality of information disseminated by

federal agencies should take place in administrative proceedings before federal agencies and not

in the courts." Salt Inst. v. Thompson, 345 F. Supp. 2d 589, 601 (E.D. Va. 2004) aff'd Salt Inst.

v. Leavitt, 440 F.3d 156 (4th Cir. 2006). As noted above, Reynolds has failed to identify a single

instance of any defendant submitting a fraudulent bill to the United States government. His so-

called *qui tam* Complaint simply challenges what he perceives to be the scientific flaws of the

NCSTAR report. The IQA provides an administrative remedy for persons like Reynolds who

feel that an administrative report is inaccurate and needs to be corrected. Finally, the language

of 15 U.S.C. § 281a provides:

> The National Institute of Standards and Technology . . .
> may initiate and conduct investigations to determine the
> causes of structural failures in structures which are used . . .
> by the general public. No part of any report resulting from
> such investigation shall be admitted as evidence or used in
> any suit or action for damages arising out of any matter
> mentioned in such report.

See 15 U.S.C. § 281a. In sum, although Reynolds contends that NCSTAR is fraudulent "on its

face," he has failed to plead his claim with particularity because he has failed to link the

defendants' allegedly fraudulent practices to the submission of even a single fraudulent claim.

He is precluded by 15 U.S.C. § 281 from using any part of the NCSTAR report as evidence in this suit under the FCA, which is apparently seeking damages arising out of matters mentioned in such report.  Id.

### III.    CONCLUSION

For all of the above reasons, this Court should dismiss Reynolds' *qui tam* lawsuit against the defendants Simpson Gumpertz & Heger, Inc. and Computer Aided Engineering Associates.

Respectfully submitted,

SIMPSON GUMPERTZ & HEGER, INC. and
COMPUTER AIDED ENGINEERING
ASSOCIATES, INC.

 By its attorneys,

/s/ David M. Pollack
David M. Pollack (DP6143)
DONOVAN HATEM LLP
One Penn Plaza
250 W. 34th Street, Suite 3324
New York, NY 10119
(212) 244-3333

David J. Hatem, P.C.
William D. Gillis, Jr., Esq.
Patricia B. Gary, Esq.
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated:  February 29, 2008

01141162//25550.144

10