Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DR. MORGAN REYNOLDS, on behalf of | : | |
| The United States of America | : | |
| | : | |
| Plaintiff, | : | <u>ECF CASE</u> |
| vs. | : | |
| | : | July 11, 2008 |
| SCIENCE APPLICATIONS | : | |
| INTERNATIONAL CORP., et al | : | 07 CIV 4612 (GBD) |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION PER F.R.Civ. P 59(e) and
LOCAL RULE 6.3
and
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Jerry V. Leaphart
Attorney for Plaintiff
On the Brief

## <u>TABLE OF CONTENTS</u>

Introductory Statement . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . 3

No Public Disclosure or Original Source . . . . . . . . . . . 5

Elements of Misapprehension . . . . . . . . . . . . . . 6

       A.     Misapprehension of Plaintiff's Qui Tam Relator Status . 7

       B.     Inaccuracies that should be corrected . . . . . . . 11

       1. This is not a case concerning who perpetrated
          the events of 9/11/01 . . . . . . . . . . 11

       2. This is not a case involving the assassination of
          President Kennedy or moon landings . . . . . . 12

       3. The Kevin Ryan claims are taken out of context . . 13

       4. Factual allegations concerning payment . . . . . 14

       5. Rule 9(b)'s heightened pleadings standard . . . . 14

    Conclusion . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**Cases**

Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,
   99 F.R.D. 99, 101 (E.D. Va. 1983) ................................................................. 6

APWU v. Potter,
   343 F.3d 619, 623 (2d Cir. 2003) (citation omitted)................................. 5, 18

Aurecchione v. Schoolman Transp. System, Inc.,
   426 F.3d 635, 638 (2d Cir. 2005)..................................................................... 5

Bank of Waunakee v. Rochester Cheese Sales, Inc.,
   906 F.2d 1185, 1191 (7th Cir. 1990) .............................................................. 6

Belmont v. Erie Ry.,
   52 Barb. 637, 641 ........................................................................................... 6

Danenberger v. Johnson,
   821 F.2d 361, 363 (7th Cir. 1987) .................................................................. 7

Divane v. Krull Electric Co.,
   194 F.3d 845, 850 (7th Cir. 1999) .................................................................. 7

Moro v. Shell Oil Co.,
   91 F.3d 872, 876 (7th Cir. 1996) .................................................................... 7

Ray E. Friedman & Co. v. Jenkins,
   824 F.2d 657, 660 (8th Cir. 1987) .................................................................. 7

Reich v. Local 1, American Postal Workers Union, AFL-CIO,
   1994 U.S. Dist. LEXIS 1118, 1994 WL 33971 *1 (N.D. Ill. Feb. 4, 1994) .................. 7

Rockwell Int'l Corp. v United States,
   127 S. Ct. 1397; 167 L. Ed. 2d 190, (2007)................................................... 9

Scheuer v. Rhodes,
   416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)...................... 5, 18

Shipping Fin. Servs. Corp. v. Drakos,
   140 F.3d 129, 131 (2d Cir. 1998)............................................................ 5, 18

Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP et al.
   2008 U.S. Dist. LEXIS 30625 (SDNY) (GBD)............................................ 7

U.S. et rel. McDermott v. Genentech Inc.,
   2006 U.S.Dist. LEXIS 90586 (D.ME)......................................................... 14

United States Labor Party v. Oremus,
   619 F.2d 683, 687 (7th Cir. 1980) ................................................................ 7

United States v. Bank of Farmington,
   166 F.3d 853, 859 (7th Cir. 1999) ............................................................... 14

Waunakee,
   906 F.2d at 1191-92 ....................................................................................... 6

White v. New Hampshire Department of Employment Security,
   455 U.S. 445, 451, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982)....................... 7

**Other Authorities**

False Claims Act, 31 U.S.C. §3729 et seq. ........................................................................ 11

**Rules**

Rule 59(e) ............................................................................................................................ 7
Rule 59(e) ........................................................................................................................ 6, 7
F.R.Civ.P  Rule  59(e) ........................................................................................................ 6
Rule 12(b)(1), ..................................................................................................................... 5

**PLAINTIFF'S MOTION FOR RECONSIDERATION PER F.R.Civ. P 59(e) and**
**LOCAL RULE 6.3**
**and**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Dr. Morgan Reynolds, (plaintiff), by his attorney, Jerry V. Leaphart of

Jerry V. Leaphart & Assoc., P.C., hereby moves this court, under and pursuant to

F.R.Civ.P. 59(e) and L.Civ.R. 6.3, for reconsideration of the Memorandum Decision and

Order (Memorandum Decision) issued on June 26, 2008 (copy annexed as Exhibit A),

that granted defendants' motions to dismiss with prejudice.

### INTRODUCTORY STATEMENT

Page 6 of the Memorandum Decision dated June 26, 2008, accurately and

correctly notes that "[t]he aim of the Information Quality Act is to assure that the

information publicly released by a federal agency is of the highest quality. It requires the

dissemination of true and accurate information, and a mechanism for individuals, affected

by that information, to seek and obtain a correction of false or inaccurate information."

Immediately thereafter the decision continues, however, with an assertion that

reflects a fundamental misapprehension of plaintiff, Dr. Morgan Reynolds' case.  The

decision states:

> "None of plaintiffs' asserted legal claims can withstand defendants' motions to
> dismiss."

The fundamental misapprehension stems from the fact that no aspect of the

plaintiff's Complaint that deals explicitly with his claims of fraud , his claims of "original

source" including his "public disclosure" allegations and/or any of his other factual

allegations are even mentioned,  let alone acknowledged for motions to dismiss purposes to be true.[1]

This assertion is confirmed in that pg. 2 of the Memorandum Decision states:

"In separate actions, three different plaintiffs, who are all represented by the same attorney, commenced individual lawsuits attempting to challenge the investigative findings, of the National Institute of Standards and Technology ("NIST"), as to how and why the World Trade Center buildings collapsed on 9/11. "

Plaintiff, Dr. Morgan Reynolds is not challenging why the "World Trade Center buildings collapsed on 9/11." That is a clear misapprehension of his information.

Even more glaringly fundamental to this assertion of misapprehension of plaintiff's claim is the fact that the document that is specifically incorporated into the complaint that gave rise to plaintiff's assertions of fraud and that constitutes the very essence of the "information" upon which his status as a qui tam relator is based is not mentioned, not referenced, not even acknowledged to exist anywhere in the Memorandum Decision. This refers to plaintiffs' Request for Correction filed with the National Institute of Standards and Technology (NIST) on March 8, 2007.

Accordingly, therefore, the Memorandum Decision does not show how the conclusion -- "[n]one of plaintiffs' asserted legal claims can withstand defendants' motions to dismiss" -- could possibly have been reached absent mention of them and absent acknowledgement of their being materially true. Indeed, the quoted language of

---

[1]    On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ. P., "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005).   However, a court must "accept as true all material factual allegations in the complaint," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

the Memorandum Decision constitutes the opposite; namely: the rejection of plaintiffs' facts – those that are among the precious few that are even mentioned, let alone assessed, still less considered to be true. Thus misapprehension is demonstrated.

The posture of this case arises in a context where for motion to dismiss purposes, the allegations contained in plaintiff's complaint are to be accorded great weight and deemed to be true.[2] Yet, those allegations, and the voluminous substantiating information that plaintiff filed and relied on are not at all mentioned or acknowledged in the Memorandum Decision.

STANDARD OF REVIEW

It is well settled and understood that an F.R.Civ.P Rule 59(e) motion for reconsideration is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990), (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). Rule 59(e) relief is also appropriate when a legal error has been committed due to inadvertence or misapprehension. See Waunakee, 906 F.2d at 1191-92 (quoting Belmont v. Erie Ry., 52 Barb. 637, 641 (N.Y. Sup. 1869) (Cardozo, J.)). Otherwise, ignoring properly preserved legal error timely brought to the district court's attention after the entry of judgment would put the parties through the unnecessary expense and delay of having to appeal the

---

[2] Id.

case to get the error corrected. <u>Divane v. Krull Electric Co</u>., 194 F.3d 845, 850 (7th Cir. 1999) (quoting <u>Moro v. Shell Oil Co</u>., 91 F.3d 872, 876 (7th Cir. 1996)).

Thus, a "<u>Rule 59(e)</u> motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law." <u>United States Labor Party v. Oremus</u>, 619 F.2d 683, 687 (7th Cir. 1980). Accord <u>Danenberger v. Johnson</u>, 821 F.2d 361, 363 (7th Cir. 1987); <u>Reich v. Local 1, American Postal Workers Union, AFL-CIO,</u> 1994 U.S. Dist. LEXIS 1118, 1994 WL 33971 *1 (N.D. Ill. Feb. 4, 1994). See also <u>Ray E. Friedman & Co. v. Jenkins,</u> 824 F.2d 657, 660 (8th Cir. 1987) (Rule "59(e) provides a means 'to support reconsideration [by the court] of matters properly encompassed in a decision on the merits.' <u>White v. New Hampshire Department of Employment Security,</u> 455 U.S. 445, 451, 71 L. Ed. 2d 325, 102 S. Ct. 1162 (1982). Under Rule 59(e) the court may reconsider issues before it, see id., and generally may examine the correctness of the judgment itself."). However, while a Rule 59(e) motion is a proper procedure for bringing to the court's attention legal errors in the proceedings, relief is not appropriate if the issue was not properly raised during the proceedings.

It is also acknowledged that Rule 59(e) motions are more likely to be granted if the issue is that of a change in the law that may not have been taken into consideration by the decision at hand.  See <u>Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP et al.</u> 2008 U.S. Dist. LEXIS 30625 (SDNY) (GBD).

As noted in the Notice of Motion filed herewith, plaintiff here asserts this court's Memorandum Decision issued on June 26, 2008, fundamentally misapprehended plaintiff's complaint as is evidenced by the manner in which said Memorandum Decision refers to numerous assertions that incorrectly reference plaintiff's complaint and

supporting materials, and which, in addition, makes assertions about what plaintiff is claiming that are the exact opposite of what plaintiff contends.  Accordingly, plaintiff seeks alternative relief as follows:

A) Rescission of the Order granting defendants' Motion to Dismiss; or

B) Modification of the Order granting defendants' Motion to Dismiss to the status of "dismissed without prejudice", together with a reasonable time for refiling of the complaint; or

C) At a bare minimum, removal of language from the Memorandum Decision that goes far beyond that which is necessary for purposes of rendering a decision in this case, and/or which concerns issues that are not properly before this court.

NO PUBLIC DISCLOSURE or ORIGINAL SOURCE

In this reconsideration motion, relator re-asserts that he contends that none of  the claims based on his "information" were derived from the public disclosures and therefore he did not have to be an original source.  However, even if he did have to qualify, he certainly does so on the basis of the "information" as filed in his written and properly filed Request for Correction (RFC) filed with the National Institute of Standards and Technology (NIST) on March 8, 2007.   Pertinent public disclosures giving rise to the FCA claims were made in that RFC.  Plaintiff-Relator contends that he could not have derived his knowledge from the public disclosure in the RFC documents because he was the <u>author of those documents</u> and therefore had to have knowledge prior to the public filing of them.

The essential fact giving rise to the claim of misapprehension is that the Memorandum Decision makes no reference whatsoever to the plaintiff's RFC, let alone

does it address the content thereof.  Thus, a fundamental misapprehension is clearly

demonstrated to have occurred.

ELEMENTS OF MISAPPREHENSION

At a bare minimum, and in order to place this case in proper perspective for

appeal, it is crucial that the record reflect what the plaintiff, Dr. Morgan Reynolds,

claims, versus the polar opposite thereof.

### A.  Misapprehension of Plaintiff's Qui Tam Relator Status:

Plaintiff, in fact, asserts that no widebody jetliners crashed into the WTC and he

makes those assertions in a document of which he is the original source and a document

that constitutes the information, as that term was recently defined by the Supreme Court[3],

upon which his causal claims were based.  This issue is misapprehended and

misconstrued in the Memorandum Decision as exemplified by the following quotes from

the Memorandum Decision:

> "Plaintiffs theorize that what actually occurred was that the Twin Towers
> disintegrated after being struck by the United States Military's secret laser-like
> weapon."  Memorandum Decision pg. 4.

> "Plaintiffs' attempted analysis of that information constitutes pure speculation
> that the NIST participant were involved in a cover-up to conceal the true cause for
> the towers' collapse.  They merely disagree with NIST's investigative findings,
> and specifically wish to reject the basic factual premise that terrorist destroyed the
> Twin Towers using passenger-filled airplanes as missile-like weapons.  Plaintiffs,
> understandably, offer nothing more than conjecture and supposition to support
> their claim that the towers were struck by high powered energy beams."
> Memorandum Decision pg. 8.

The above quotes clearly entail a fundamental misapprehension of plaintiff, Dr.

Morgan Reynolds's complaint, because, among other reasons, the Memorandum

Decision makes no reference whatsoever to the fact that plaintiff filed a Request for

---

[3] <u>Rockwell Int'l Corp. v United States</u>, 127 S. Ct. 1397, 167 L. Ed. 2d 190, (2007).

6

Correction (RFC) dated March 8, 2007, together with additional supplements filed thereafter, to which NIST replied on September 28, 2007, all of which, collectively, comprise the "information" upon which his status as either an original source for FCA purposes or a relator who need not qualify as an original source because he is the author of the disclosed information and his standing as having "direct and independent" information are based.  Plaintiff, Dr. Morgan Reynolds' said information – his RFC – is nowhere mentioned in the Memorandum Decision.  This bears some emphasis here because the source of his information, his RFC, is simply not at all taken in consideration, let alone analyzed in the important jurisdictional context of whether or not public disclosure had occurred and whether or not he is the original source thereof.

Not only that, the essence of Dr. Reynolds' case,  that no widebody jetliners crashed into the WTC, is not factored into the above quoted language of the Memorandum Decision.  Dr. Reynolds does not base his case on assertions involving directed energy weapons.  That is not the essence of his "information".

To be sure, this court did properly reference the fact that what is mentioned in the above paragraph, namely the RFC and its related information, are properly before this court and should, therefore, have been considered.  The Memorandum Decision contains Footnote 15, pg. 10, stating:

> "The sufficiency of the pleadings is determined by examination of the complaint, the exhibits attached thereto, and matters incorporated by reference therein.  Other independent submissions made by the defendants, with regard to the jurisdictional challenge, were not considered in assessing the legal adequacy of the complaints"

By virtue of that language, it is clear that Dr. Morgan Reynolds's RFC must, of necessity, be considered an integral part of the complaint and the information relied on for purposes

of jurisdiction under the False Claims Act, 31 U.S.C. §3729 et seq. (FCA).  Not only that,

the allegations are to be deemed true.

      In addition to that fundamental misapprehension, the following quoted elements

of the Memorandum Decision rise to the mandated level for granting a Rule 59(e)

reconsideration motion:

> "The allegations in plaintiffs' complaints are based entirely on information made publicly available through NIST's administrative investigation, the administrative report resulting therefrom (*i.e.*NCSTAR 1), a prior civil action and various media accounts." Memorandum Decision pg. 7.

> Their personal hypothesis about what should be concluded from publicly disclosed information does not qualify either of them as an original source of information in order to sustain an individual FCA claim on behalf of the Government.  See, <u>Kreindler</u>, 985 F.2d at 1159; see also, <u>New York Med. Coll</u>., 252 F. 3d at 121-22."  Memorandum Decision pg. 8.

> To state a FCA claim, plaintiffs must sufficiently allege the defendants knowingly presented a false or fraudulent claim; knowingly made or used a false record or statement to get a fraudulent claim paid; or knowingly made or used a false record or statement to decrease their obligation to pay the Government.  The theory of plaintiffs' lawsuit is that the defendants violated the FCA because they were not entitled to any remuneration for the services they rendered to NIST since NIST ultimately failed to conclude, consistent with plaintiffs' hypothesis, that the Twin Towers was destroyed by the military's directed energy weapons."  Memorandum Decision pg. 10.

      Plaintiff simply has not been heard.  He did not rely on a "personal hypothesis;"

and it is improper to refer to his claims as such in that doing so affirmatively <u>rejects</u> the

truthfulness of his RFC in the context of a motion to dismiss.  This is incongruent with

motion to dismiss protocol.  Plaintiff presented a detailed RFC, containing forensic

information, to which NIST replied by making certain additional admissions concerning

the limited scope of what had been investigated and an attempt to rely on "computer

modeling" among other admissions or potential admissions of fraud.  NIST did not refer

to his RFC as "his personal hypothesis" and thus there was absolutely no basis for the

court to have done so; especially since, as indicated, for motion to dismiss purposes his claims are to be deemed true.

The nature of the forensic information put forward by plaintiff-relator, Dr. Reynolds, can be exemplified by the specific example of NIST making the admission in its reply to his RFC of asserting that "the aircraft would not be expected to decelerate immediately upon impact with the exterior wall of the tower", which is an open violation of Newton's 3rd law of motion. Newton's laws are the basis of modern engineering and the defendants know better than to supply work to NIST that violates Newtonian physics. That is but one example of the nature of Dr. Reynolds' information. Clearly that information was misapprehended and, instead, plaintiff Reynolds' actual claims were not properly apprehended, let alone addressed.

To be sure, plaintiff has stated that the defendants herein are aware, by virtue of their involvement in areas of specialty that are directly related to engineering and physics that they know or should have known that aluminum aircraft cannot penetrate steel without degrading, as was seen to have happened in the video depictions, which are contradicted by the eyewitness testimony that plaintiff referenced. The plaintiff's claims are, then, in the nature of forensic science where he articulated an abundance of effects that could only be explained by false video imagery. When that set of facts is added to the fact that the defendants are knowledgeable about the effects associated with material interactions, including crash events, the elements of fraud are not only clear and palpable, they are entirely different from the way this court characterized his claims.

That merits reconsideration so that, at a minimum, what he has actually claimed should be properly referenced in the court's decision and findings. As things now stand,

9

the Memorandum Decision does not address plaintiff's claims. This assertion follows from the fact that, among others, there is no connection between the court's articulation of the "original source" doctrine and the actual "information" upon which plaintiff's qui tam case is based. Dr. Morgan Reynolds filed an RFC with NIST on March 8, 2007 and that is his "information."

His complaint plainly confirms this characterization by the exact content of paragraphs 7 through 10 of his complaint.

It may be that plaintiff's complaint was not clear enough in this respect. For instance, it is true that plaintiff made a reference, based upon "information and belief," that directed energy weapons (DEW) are and remain highly classified, secret instrumentalities of the military apparatus of the Armed Forces of the United States of America." That was not, however, an allegation of who did what, nor was it intended to convey any such claim. In addition, DEW are not an integral part of plaintiff's RFC, let alone his qui tam case. This case pertains to the issue of fraud as it relates to the failure to properly analyze information that was available that confirms no wide-body Boeing 767 jetliners crashed into the WTC. There is no analysis of that claim in the Memorandum Decision and no linking of plaintiff's actual information, that which is derived from his RFC, to the decision rendered in his case. Even if plaintiff was somehow not as clear as he might have been by virtue of making a reference to DEW in his complaint, the proper remedy would be dismissal without prejudice so as to make sure the defendants know what they're being charged with having done.

It is respectfully submitted, however, that the defendants do know what they are charged with.

The jurisdictional elements of the FCA[4] confirm that the inquiry into whether a court may hear a  qui tam relator's claim has three parts: (1) Have the allegations made by the plaintiff  been 'publicly disclosed'? (2) If so, is the lawsuit 'based upon' that publicly disclosed information? (3) If so, is the plaintiff an 'original source' of the information?" United States v. Bank of Farmington, 166 F.3d 853, 859 (7th Cir. 1999). See also U.S. et rel. McDermott v. Genentech Inc., 2006 U.S.Dist. LEXIS 90586 (D.ME).  The burden is on relator to show that he satisfies this jurisdictional requirement.   Because the Memorandum Decision did not address plaintiff's information, it cannot properly be said that he has had his information assessed in accordance with the applicable standards.  Moreover, it is here asserted that were the actual information upon which plaintiff relies to have received consideration, as it has thus far not received, it would result in the denial of defendants' motions to dismiss.  At a bare minimum, and in order to avoid the time and expense of an appeal on this issue, the Memorandum Decision requires reconsideration.  This is the purpose of a Rule 59(e) motion, at its most fundamental level.

It has already been acknowledged in behalf of plaintiff that we know that the claims made in his case have a capacity to be startling.  However, he still deserves to be properly understood and to have his claims addressed for what they actually are, and not otherwise.

### B. Inaccuracies that should be corrected:

1. This is not a case concerning who perpetrated the events of 9/11/01:

Page 2 of the Memorandum of Decision states:

---

[4] 31 U.S.C. §3730(e)(4)(A).

"According to plaintiffs, the evidence demonstrates that the destruction of the World Trade Center Towers was caused by a United States secret military "directed energy weapon.""

That claim is inaccurate. Plaintiff makes no assertion whatsoever about whether or not the directed energy weapons (DEW) that were used to destroy the World Trade Center (WTC) are, in fact, those of the United States military, secret or otherwise. Indeed, this is the "NO PLANES" case that actually challenges the defendants on a basis completely different from that involved in the claim that DEW destroyed the WTC. Clearly, his claim was not properly assessed and appears to have been completely misapprehended. Plaintiff does not say <u>who</u> destroyed the WTC. Plaintiff's case is a forensic evaluation of the assertion that wide-body, 767 jetliners crashed into the WTC and it arises in the context of challenging NIST's findings and the manner in which the contractors, the defendants herein, engaged in fraudulent work. Clearly, then, there exists, at present, a fundamental misapprehension in that plaintiff makes no claim at all about either <u>who perpetrated</u> the destruction of the WTC, let alone the claim that DEW destroyed the WTC. Plaintiff claims no planes hit the WTC. That is his claim.

2. This is not a case involving the assassination of President Kennedy or moon landings:

Page 8 of the Memorandum Decision states:

"Such an argument, based solely on publicly available information, could no more support a federal lawsuit to advance an alternative theory regarding the assassination of President Kennedy, or whether men ever actually landed on the moon."

It is here asserted that the quoted language serves no purpose in this case and is not at all a part of the framework of what the plaintiff alleges. In fact, the quoted language is consistent with the perception that plaintiff herein is engaging in what is pejoratively referred to as "conspiracy theory." Once again, this is <u>not</u> a case involving allegations of

"who" destroyed the WTC.  As such, this case, on its face, is not one claiming to involve

"a conspiracy".  That is not what this case is about and it is considered unfortunate that

the case may be viewed that way.  However, by virtue of not assessing the actual

information upon which this case is based, it is a little more understandable how plaintiff

and his claims could have been perceived as involving conspiracy claims.  It does no such

thing.  The misapprehension cries out for correction sooner rather than later.

3. The Kevin Ryan claims are taken out of context:

> Footnote 12, pgs. 7-8 of the Memorandum Decision states:

>> "In their respective complaints, plaintiffs allege that defendant
>> Underwriters Laboratories, Inc. ("UL") "overtly suppressed []information
>> [from NIST] by terminating the services of one of its employees, Kevin
>> Ryan, who called attention to [the] incongruity of causal explanation."
>> (Wood, Am. Compl. ¶39; Reynolds Compl. ¶37).  Prior to the
>> commencement of the cases at bar, Kevin Ryan filed suit against UL,
>> claiming he was wrongfully discharged because he had sent an e-mail to
>> NIST indicating that:  UL had conducted WTC related metallurgical
>> testing; the official explanation for the destruction of the WTC was not
>> supported by a scientific analysis of the evidence; and there was
>> substantial evidence that all three buildings collapsed from explosive
>> devices.  (Ryan v. Underwriters Lab., Inc., No. 06-1770 (S.D.Ind. filed
>> Nov. 16, 2006).  Thus the information at the heart of the Wood and
>> Reynolds litigation "was publicly disclosed because it was available to
>> anyone who wished to consult the [Ryan] court file.:  Kreindler, 985 F.2d
>> at 1158."

It is true that the plaintiff's complaint mentions "Kevin Ryan," however, that factual

recital is not a part of plaintiff's information or claim, as such.  Moreover, by calling

attention to that paragraph of plaintiff's complaint, while simultaneously ignoring

altogether the salient portions of what his information actually consists in, it merely

confirms, in this additional particular, that plaintiff has been misapprehended.  Similarly

the Memorandum Decision states that plaintiff relied on "newspapers."  That is

fundamental misapprehension.  Plaintiff did not "rely" on newspapers and this allegation

is not sourced in the Memorandum Decision.

4.  Factual allegations concerning payment:

> The Memorandum Decision contains the following language at pg. 11:

> "Plaintiffs have pled no factual allegations to support a reasonably interference
> that defendants knowingly sought payment from the government to which they
> were not entitled."

By virtue of not referencing plaintiff's actual information and actual claims of fraud, the

quoted statement lacks a necessary foundation and is further evidence of the clear need

for reconsideration of this case.

5.  Rule 9(b)'s heightened pleadings standard:

> It follows that by virtue of not having considered the plaintiff's actual

information, that the following declaration found on page 12 of the decision cannot be

accurate:

> "Plaintiffs have not only failed to comply with the liberal pleading standards
> applicable to a consideration of a motion to dismiss pursuant to Fed.R.Civ.P.
> 12(b)(6), they have also failed to meeting the stricter pleading standard under
> Fed.R.Civ.P. 9(b)"

Plaintiff adequately addressed the Rule 9(b) issues in his responsive pleadings to the

motion to dismiss.  The court's reasoning cannot be said to have properly addressed that

response, and to have misapprehended it, because of the exclusion of the actual

information upon which plaintiff's claims of fraud are based.

> Moreover, the proper remedy for a lack of particularity would certainly include a

dismissal without prejudice so as to afford an opportunity to provide those particulars.

However, as noted in plaintiff's submittals, the defendants herein are corporate

defendants and they have dominion and control over the information from which

additional particulars could be found.  It was also noted that their claims for particularity

did not prevent them from actually and formally "answering" plaintiff's claims, thus

putting paid to the claim they needed additional particulars.

6.  Footnote 19

        The final request for reconsideration concerns the following quoted portion of

Footnote 19, pg. 15:

> "A belief, no matter how incredible, that the WTC was destroyed using secret
> exotic weaponry, does not give rise to even a colorable claim for relief.  All
> plaintiffs, as well as the attorney for the plaintiff here, are hereby warned that
> filing further successive untenable actions may result in the imposition of
> monetary or other serious sanctions."

It is respectfully submitted that based on the fundamental misapprehension of plaintiff's

claims, as articulated hereinabove, the quoted portion of Footnote 19 should be deleted

from the court's Memorandum Decision.  The plaintiff's case is not based on DEW

claims, it is based on the claim that no wide-body jetliners hit the WTC.   The quoted

language confirms that plaintiff's actual contentions were not mentioned by the court,

hence the quoted language has no actual application to him.  Moreover, that language

utterly eradicates all semblance of compliance with motion to dismiss protocol whereby,

as noted above, a court must "accept as true all material factual allegations in the

complaint," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)

(citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)),

but refrain from "drawing from the pleadings inferences favorable to the party asserting

[jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

        Equally demonstrative of fundamental misapprehension is the court's reference to

future claims that, by definition, fall outside the scope of the issues presented in this case

and therefore should not be a part of the decisional framework.  It is considered improper, inappropriate and an overreach to disparage what the party to this lawsuit and his counsel might do in future cases and controversies they might engage in which is all the more questionable since the basic requirement to treat plaintiff's claim as true has been openly breached.

CONCLUSION

For all of the reasons set forth herein, this is a case that cries out for the granting of plaintiff's motion for reconsideration in its entirety; or, at a minimum, to change the "with prejudice" outcome to one of "without prejudice."  At a bare minimum, the decision should be corrected to remove all of the inaccuracies mentioned herein so as to pave the way for an orderly appeal.

Respectfully submitted,

THE PLAINTIFF

By_ /s/ Jerry V. Leaphart_____
Jerry V. Leaphart jl4468
JERRY V. LEAPHART & ASSOC., PC
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
(203) 825-6256 - fax
jsleaphart@cs.com

Dated:          Danbury, CT
                July 11, 2008

## <u>ELECTRONIC CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2008, a copy of the foregoing Plaintiff's Motion

was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by email to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing as

indicated on the Notice of Electronic Filing.  Parties may access this filing through the

Court's CM/ECF System.


    /s/ Jerry V. Leaphart
Jerry V. Leaphart (jl4468)
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
Tel. (203) 825-6265
Fax (203) 825-6256

MOLReconsid[1]MR

17

# EXHIBIT A
(Memorandum Decision dated June 26, 2008)